**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                    )
DIANE LACKIRAM,                     )
                                    )
        Plaintiff,                  )
                                    )        C.A. No. 04-12592-GAO
v.                                  )
                                    )
LINDA MONTMINY, et al.,             )
                                    )
        Defendants.                 )
_____)


**DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF THEIR MOTION FOR SUMMARY JUDGMENT**

I.    **Introduction**

        Plaintiff Diane Lackiram ("Lackiram") has brought this
action against the Secretary of the Massachusetts Office of
Health and Human Services, the Commissioner and seven other
officials of the Massachusetts Department of Mental
Retardation ("defendants").  She alleges that the
defendants subjected her to employment discrimination and
then, after she complained, to retaliation, thereby
violating her rights under both Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e-2 (2000), and the
Massachusetts Fair Employment Act, Mass. G.L. c. 151B.  She
further claims that the defendants defamed her in violation
of state law.

-2-

Lackiram fails to demonstrate a <u>prima facie</u> case of either racial discrimination or retaliation.  She has not alleged any "adverse employment action" or produced any evidence from which a jury could reasonably infer discriminatory or retaliatory animus.  As for her claim of defamation, Lackiram cites no evidence on which a jury could reasonably infer actual malice or unnecessary, unreasonable or excessive publication on the part of defendants.  Accordingly, summary judgment should be granted the defendants.

## II.    <u>Statement Of The Undisputed Material Facts As To Which There Is No Issue To Be Tried</u>

Pursuant to Superior Court Rule 9A(b)(5)(as amended April 1, 1998), the defendants submit that the following numbered material facts are not in genuine dispute:

1.    Lackiram is an African-American who has at all times relevant been employed by the DMR.[1]

2.    On August 23, 1981, Lackiram was hired by the Massachusetts Department of Mental Retardation ("DMR") as a Mental Retardation Worker I ("MRW-I") at the Fernald

---

[1]    Plaintiff's Complaint, ¶¶ 13, 16.

-3-

Development Center ("Fernald").[2]  In 1982, she was promoted
to an MRW-II; in 1989, to an MRW-III; and in 1990, to an
MRW-IV.[3]

3.    In January and February 2002 a general layoff at
Fernald prompted Lackiram and four other MRW-IV's to
exercise their union bumping rights to transfer to the
Hogan Regional Center ("Hogan") as MRW-IV Administrative
Officers ("MRW-IV-AO's").[4]

4.    Orientation was provided to Lackiram and the four
other MRW-IV's transferring from Fernald to the Hogan.
They were advised that they would not be responsible for
the direct supervision or evaluation of MRW's.[5]  Pursuant to
their Position Title, their duties and responsibilities
would include the overall scheduling of direct care staff;
the proper implementation of policies; and the indirect
supervision of staff through role modeling, demonstration,
instruction and evaluation.  They would also be required to
provide direct care to the residents as needed.[6]

---

[2]    Id., ¶ 14; Affidavit of Faith Kirkland.

[3]    Affidavit of Faith Kirkland.

[4]    Id.

[5]    Affidavit of Faith Kirkland.

[6]    Position Description, MRW-IV Administrative Officer, Exhibit A.

-4-

5.   Lackiram was assigned to two DMR residences located at 1 and 4 Hathorne Circle.[7]

6.   In January 2003, Lackiram went to her direct supervisor, Leila Sarkis, the Assistant Division Director, and Ruth Nathans, the Division Director, and complained that Derrick Jones, an African-American MRW-I, had been given a "below-grade" evaluation on his annual Employee Performance Review.[8]  Sarkis and Nathans reminded Lackiram that as an MRW-IV-AO she was not responsible for direct supervision or evaluation of MRW's and said that Lackiram should therefore not concern herself about Jones.[9]

7.   On March 17, 2003, Lakiram sent a memorandum to Linda Montminy, Hogan's Facility Director.  She wrote that she had come to Hogan from Fernald a little over a year before and that, although she realized that MRW-III's and IV's had a very different role at Hogan, she had become the latest victim of "inconsistencies in the application of policies and procedures, disparate treatment, discriminatory practices, disrespect, and preferential

---

[7]   Affidavits of Faith Kirkland and Ruth Nathans.

[8]   Plaintiff's Complaint, ¶ 18.

[9]   Affidavit of Ruth Nathans.

-5-

treatment."[10]  She further wrote that Nathans had "made a
very disturbing statement" to her in the dining room, while
in the presence of unnamed staff, that "You don't fit in
here!"[11]  At the time of the alleged remark, there were five
African-American MRW-IV-AO's and at least twenty African-
American MRW's on Lackiram's shift.[12]

8.  On April 22, 2003, Sarkis sent Lackiram a form
letter stating that, pursuant to Article 8 of the
Collective Bargaining Agreement, she would have to submit
medical evidence in be paid sick leave for April 18 and 19,
2003.[13]  Article 8 provided that "[w]here the Appointing
Authority has reason to believe that sick leave is being
abused, [it] may require satisfactory medical evidence from
the employee."[14]  In the three months prior to April 22,
2003, Lackiram had been late or absent without proper
documentation three times.[15]  Satisfactory medical evidence
was defined as consisting of a signed statement by a

---

[10]  A copy of the April 17, 2003 memorandum is annexed as Exhibit B.

[11]  Id.

[12]  Affidavit of Faith Kirkland.

[13]  A copy of the April 22, 2003 letter from Sarkis to Lackiram is annexed as Exhibit C.

[14]  Collective Bargaining Agreement, Article 8, § 1K, a copy of which is annexed as Exhibit D.

[15]  Affidavit of Ruth Nathans.

-6-

licensed Physician, Physician's Assistant, Nurse
Practitioner, Chiropractor or Dentist stating that he or
she had personally examined the employee and informing DMR
as to the nature of the illness or injury, the fact that
the employee was unable to perform his or her duties due to
the specific illness or injury on the days in question, and
the prognosis for when the employee might return to work."[16]

    9.   On April 23, 2003, Montminy and Faith Kirkland,
the Assistant Director of Human Resources for the Northeast
Region, met with Lackiram to address her April 17
memorandum.[17]   Lackiram was told that charges of
discriminatory or abusive behavior would be investigated,
but that they would have to be specific, setting forth
date, time, location and names of witnesses.[18]   As for
Nathan's alleged remark that Lackiram did not fit in,
Kirkland told Lackiram that Nathans denied making any such
remark and that, without the names of witnesses, no further

---

[16]    Id.
[17]    Affidavit of Faith Kirkland.
[18]    Id.

-7-

action was warranted.[19]  Montminy later sent Lackiram which

summarized this meeting.[20]

10.  On April 23, 2003, Nathans sent Lackiram an

interoffice memorandum stating that a letter that she had

authored was not satisfactory medical evidence for an

emergency personal day and that she would therefore not be

paid for April 16, 2003.[21]  Lackiram was later able to

produce satisfactory medical evidence and she was,

accordingly, paid for April 16.[22]

11.  On May 23, 2003, Sarkis sent Lackiram another

form letter pursuant to Article 8 of the Collective

Bargaining Agreement requesting that she submit

satisfactory medical evidence to substantiate May 15, 2003

as a sick day.[23]  Lackiram produced satisfactory medical

evidence and, accordingly, she was paid for May 15, 2003.[24]

---

[19]    Id.

[20]    A copy of the April 30, 2003 memorandum is annexed as Exhibit E.

[21]    Affidavit of Ruth Nathans.  A copy of the April 23, 2003
interoffice memorandum is annexed as Exhibit F.

[22]    Affidavit of Ruth Nathans.

[23]    Affidavit of Leila Sarkis.  A copy of Sarkis's May 23, 2003
letter is annexed as Exhibit G.

[24]    Affidavit of Leila Sarkis.

-8-

12.  On June 19, 2003, Lackiram received a positive Employee Performance Review for 2002-2003.[25]  As in previous years, she was rated as "meets" expectations in all categories.[26]

13.  On June 24, 2003, Lackiram was telephoned by Lisa Harrison, the Affirmative Action Officer, to discuss her claims of racial discrimination and retaliation.[27]  Lackiram ignored her duties and responsibilities as a role model and proceeded to loudly complain about her job in front of residents and staff, for which she received an informal warning from Nathans on July 11, 2003.[28]

14.  On June 26, 2003, Lackiram left work five hours early and remained out of work through July 3, 2003. Despite repeated requests that she submit medical documentation for sick time,[29] Lackiram failed to do so with

---

[25]    A copy of Lackiram's completed 2002-2003 Employee Performance Review Form is annexed as Exhibit H.

[26]    Id.; Plaintiff's Complaint, ¶ 30.

[27]    Complaint, ¶ 31.

[28]    Affidavit of Ruth Nathans.  A copy of the Informal Warning is annexed as Exhibit I.

[29]    A copy of Sarkis's July 15, 2003 request, Lackiram's response, her union grievance, and Kirkland's denial are annexed as Exhibit J.

-9-

respect to June 26 and 27, for which she was docked five and eight hours respectively, for a total of $191.[30]

15.  On July 11, 2003, Lackiram received a Formal Warning for having been tardy or taken days off without authorization on thirteen separate occasions between February 7 and July 11, 2003.[31]  Also cited were Lackiram's long history of counseling and suspensions for unacceptable attendance at the Fernald and the attempts made to accommodate her schedule at Hogan, specifically "first lunch" so that Lackiram could come in later than normal and changing her days off at her request.[32]

16.  On August 8, 2003, Lackiram filed a Complaint with the Massachusetts Commission Against Discrimination ("MCAD"), in which she claimed discrimination and disparate treatment of African-Americans.[33]  She referred to not being allowed to participate in Jones's evaluation, to her being the only African-American on Hogan's second shift, to Nathans' remark that she did not fit in, to her having been

---

[30]    Affidavit of Faith Kirkland.

[31]    A copy of the July 11, 2003 Formal Warning is annexed as Exhibit K.

[32]    Id.

[33]    A copy of the August 8, 2003 MCAD complaint is annexed as Exhibit L.

-10-

denied emergency leave, to her evaluation having been done in one day by someone other than her supervisor, to her having been disciplined for speaking with Harrison, and to her being watched constantly for additional disciplinary infractions.

17.  On October 9, 2003, Charles Berfield, Jr., an MRW-II at Hathorne 4, wrote a letter complaining that Lackiram had engaged in workplace violence.[34]  Lackiram, in turn, filed a workplace violence complaint against Berfeld.[35]  Kirkland's preliminary investigation did not support any charge of workplace violence, but Lackiram was removed from all administrative functions and reassigned to direct care pending further review.[36]  Berfield was transferred to direct care at 1 Hathorne Circle.[37]  After a prolonged investigation culminating in a 21-page report dated December 9, 2005, Kirkland determined that Lackiram

---

[34]  A copy of Berfield and Lackiram's October 9, 2003 handwritten complaints are annexed as Exhibit M.

[35]  Affidavit of Faith Kirkland.

[36]  Id.

[37]  Id.

-11-

and Berfeld had acted in an unprofessional and unacceptable manner.[38]

18.  On October 15, 2003, Lackiram was out sick.  The medical documentation which she later submitted did not cover that date.  Lackiram refused to allow for clarification with her doctor, saying that it was a form of harassment and retaliation.  Accordingly, Lackiram was docked eight hours of pay for October 15, amounting to $150.68.[39]

19.  On March 17, 2004, Donna Willett, an MRW-IV Administrative Officer at 4 Hathorne, wrote a letter complaining that Lackiram had engaged in workplace violence.  On March 22, Lackiram faxed DMR a counter complaint.  Lackiram was placed on paid administrative leave pending review.[40]  Kirkland interviewed Willett and all witnesses to the incident other than Lackiram, who refused to speak with Kirkland.[41]

---

[38]    Id.

[39]    Affidavit of Faith Kirkland.

[40]    Id.; a copy of Willette's complaint, of Lackiram's counter complaint; of Lackiram's placement on administrative leave are annexed as Exhibit O.

[41]    Affidavit of Faith Kirkland.

-12-

20.  On March 26, 2004, Kirkland telephoned Lackiram,
and Montminy wrote to confirm, that the incident with
Willette did not rise to the level of workplace violence
and that, pending full completion of her review, Lackiram
should report to work at 6 Hathorne Circle on March 30,
2004.  There she would no longer be under Willett's
supervision but that of Vincent Louissant.[42]

21.  Lackiram refused to return to work and on March
29, 2004 requested the forms necessary for a claim for
worker's compensation.[43]

22.  Through her legal representative, Lionel Porter,
Lackiram requested the forms for leave under the Family
Medical Leave Act ("FMLA"), advising that her husband had
been in an automobile accident and that she needed to care
for him.[44]  Soon thereafter, Lackiram submitted to DMR a
copy of an April 14, 2004 letter to Porter from Psychiatric
Nurse Practitioner Lauretta Mona, stating that Lackiram was
under her care for treatment of depression and anxiety,
recommending that she not work at this time, and that it

---

[42]   Id.; a copy of Montminy's March 26 letter is annexed as Exhibit
P.

[43]   Affidavit of Faith Kirkland; a copy of Kirkland's confirmatory
letter is annexed as Exhibit Q.

[44]   Affidavit of Faith Kirkland.

-13-

would be uncertain how long she would have to remain out of work.[45]

23.  DMR approved Lackiram's request for FMLA leave as of April 14, 2004.  This was extended every 30 days until April 14, 2005.[46]

24.  On December 10, 2004, Lackiram filed the above-captioned action in Superior Court.

25.  Lackiram has not returned to work and her employment status remains unchanged due to the pending litigation.[47]

III. **Argument**

A.  **Lackiram Has Failed To Make Out A Prima Facie Case Of Discrimination.**

Lackiram claims that, unlike white MRW-IV-AO's, she was: (1) denied overtime; (2) deprived of the opportunity to supervise and participate in the evaluation of other MRW's; (3) required to do an excessive amount of direct care; and (4) told by one of her supervisors that she "did not fit in."  These claims fail to make out a case of prima

---

[45]    A copy of Mona's letter is annexed as Exhibit R.

[46]    Affidavit of Faith Kirkland.

[47]    Id.

-14-

facie discrimination and therefore summary judgment should
be granted the defendants.

To prove a claim of employee discrimination, a
plaintiff must first make out a prima facie case.  This
consists of four elements:  1) that she is a member of a
protected class; 2) that she suffered an adverse employment
action; 3) that there was discriminatory animus; and 4)
that the discriminatory animus caused the adverse
employment action.  Lipchitz v. Raytheon Co., 434 Mass.
493, 502 (2001).

Lackiram's claims only meet the first element of a
prima facie case of discrimination, namely that she is an
African-American and therefore a member of a protected
class.  Her claims do not meet the second element of a
prima facie case because she has not alleged any "adverse
employment action," as that term has been defined by both
Title VII and Mass. G.L. c. 151B.

The defendants took no action--adverse or otherwise--
to deny Lackiram overtime.  Overtime was voluntary.  As
Lackiram candidly admitted in her deposition, she never
volunteered, asked for, or wanted any overtime "because of
the commute going back and forth to New Hampshire, and the
terribly long ride, getting home, having to prepare supper

-15-

for my family, coming back, trying to--I was not interested

in (overtime) from Day 1."[48]

Any change in supervision, evaluation, or amount of

direct care would also not constitute an "adverse

employment action" as defined by Title VII or Mass. G. L.

c. 151B.  To demonstrate an "adverse employment action"

under either of these statutes, an employee must introduce

"objective evidence" that she has been "disadvantaged in

respect to salary, grade, or other objective terms and

conditions of employment."  Marrero v. Goya of Puerto Rico,

Inc., 304 F.3d 7, 23 (1st Cir. 2002); Blackie v. Maine, 75

F.3d 716, 725 (1st Cir. 1996); MacCormack v. Boston Edison

Company, 423 Mass. 652, 663 (1996).  A materially adverse

change in the terms and conditions of employment "must be

more disruptive than...an alteration of job

responsibilities."  Dykstra v. First Student, Inc., 324 F.

Supp.2d 54, 63 (D. Me. 2004).  Courts have recognized that

workplaces are "rarely idyllic retreats, and the mere fact

that an employee is displeased by an employer's act or

omission does not elevate that act or omission to the level

of a materially adverse employment action."  Blackie v.

---

[48]    A copy of the relevant pages of Lackiram's deposition are annexed
        as Exhibit S.

-16-

Maine, 75 F.3d at 725.  This would be especially true with respect to Lackiram's assignment to direct care.  The MRW-IV-AO Position Title specifically included direct care as a term and condition of employment.[49]

It is true that after October 2003 Lackiram was relegated exclusively to direct care pending the outcome of the investigation into Berfeld's allegations of workplace violence against her.  If her exclusive assignment to direct care were deemed a sufficient change in terms and conditions of employment to constitute an adverse employment action, it would still not satisfy the third and fourth elements necessary for a prima facie case.  Lackiram has no evidence from which a jury might reasonably infer that the defendants harbored a racially discriminatory animus.  An employee cannot avoid summary judgment "'merely upon conclusory allegations, improbable inferences, and unsupported speculation.'"  Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000), quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); accord Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 127 (1997); Brunner v.

---

[49]    Exhibit A.

-17-

<u>Stone & Webster Engineering Corp.</u>, 413 Mass. 698, 705 (1992).

Lackiram would find direct evidence of discriminatory animus in Nathan's alleged April 23, 2003 remark that Lackiram "did not fit in."  Assuming that Nathans had made such a statement--something which Nathans strenuously denies--it would still not be actionable.  Lackiram was not the only African-American on her shift.  Quite the contrary, at the time of Nathan's alleged remark, Lackiram was one of five African-American MRW-IV-AO's and one of at least twenty African-American MRW's on her shift.[50]  Even if Lackiram were thought to be the only African-American, such a remark could only be reasonably characterized as an "isolated, ambiguous, or stray remark[]," the kind which has been uniformly found insufficient to support a case of discriminatory animus.  <u>Mullenix v. Forsyth Dental Infirmary For Children</u>, 965 F. Supp. 120, 155 (D. Mass. 1996)(mildly offensive and non-offensive stray remarks are not actionable conduct); <u>Fontaine v. Ebtec Corp.</u>, 415 Mass. 309, 314 n. 7 (1993); <u>Johansen v. NCR Comten, Inc.</u>, 30 Mass.App.Ct. 294, 302 (1991).

---

[50]    Affidavit of Faith Kirkland.

-18-

Finally, even if it were assumed that Lackiram could make out a prima facie case of adverse employment action and discriminatory animus, the defendants have articulated a lawful, non-discriminatory reason for assigning Lackiram exclusively to direct care, namely the workplace violence complaint lodged against Lackiram by her co-worker, Charles Berfeld, Jr.[51]  Lackiram, because she bears the burden of persuasion on the ultimate issue, must "produce evidence sufficient to support a jury verdict that it was more likely than not that the articulated reason was pretext for actual discrimination."  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991); accord Abramian v. President & Fellows of Harvard Coll., 432 Mass. 107, 116 (2001).  . She simply cannot, and without identifying a genuine issue of material fact on the question of pretext, summary judgment must be granted the defendants.  Rathbun v. Autozone, Inc., 361 F.3d 62, 72 (1st Cir. 2004); Thomas v. Eastman Kodak Co., 183 F.3d 38, 62 (1st Cir. 1999).

### B.   Lackiram Has Failed To Make Out A Prima Facie Case Of Retaliation.

Lackiram claims that after her March 13, 2003 memorandum complaining of racial discrimination she was

---

[51]    Exhibit M.

-19-

subject to retaliation in violation of Title VII and Mass.
G.L. c. 151B.  It took the form, she says, of heightened
scrutiny of her performance and attendance records, leading
to additional adverse employment action.  Such scrutiny
would not constitute an adverse employment action
sufficient to make out a <u>prima</u> <u>facie</u> case of retaliation.

In order to make out a <u>prima</u> <u>facie</u> case of
retaliation, a plaintiff has to prove that:  (1) she
engaged in protected conduct under Title VII; (2) she
suffered an adverse employment action; and (3) the adverse
action was causally connected to the protected activity.
<u>Hernandez-Torres v. Intercontinental Trading, Inc.</u>, 158
F.3d 43, 47 (1st Cir. 1998) Mole v. University of
Massachusetts, 442 Mass. 582, 591-92 (2004).

Assuming that Lackiram's memorandum and her other
internal complaints and filing with the MCAD were protected
conduct, she did not suffer an adverse employment action.
It did not alter the conditions of her employment.  Indeed,
the Collective Bargaining Agreement provided that where the
DMR had "reason to believe that sick leave is being
abused," it could require satisfactory medical evidence
from an employee to support it.  Lackiram had given the DMR
ample reason to believe that she was abusing sick leave.

-20-

In the three months prior to the heightened scrutiny of her attendance, she had been late or absent three times without proper documentation.[52]  She had a long history of counseling and suspensions for unacceptable attendance at the Fernald.  Moreover, when DMR began to ask Lackiram for documentation, it would frequently fall short of what was required by the Collective Bargain Agreement, sometimes to be corrected and sometimes not.[53]

Similarly, the heightened scrutiny of her performance was not an adverse employment action, but one consistent with the terms of her employment.  Co-workers had accused Lackiram of subjected them to workplace violence on two separate occasions.  Defendants had no choice but to investigate and to reassign Lackiram pending the outcome.

Even if higher scrutiny of Lackiram's attendance and performance--with the resultant $341.68 reduction in pay and reassignment to direct care--were somehow deemed to be adverse employment actions, they would not suffice to make out a prima facie case of retaliation against the defendants.  Lackiram cannot demonstrate a causal

---

[52]    Affidavit of Ruth Nathans.

[53]    Affidavit of Faith Kirkland.

-21-

connection between her protected conduct and these
employment actions.

Lackiram would infer the causal connection from the
fact that heightened scrutiny followed the protected
conduct.  However, mere temporal proximity is not
sufficient to make out a causal link.  Prader v. Leading
Edge Products, Inc., 39 Mass. App. Ct. 616, 617 (1996).
For if it were otherwise, any "disgruntled employee, no
matter how poor his performance or how contemptuous his
attitude toward his supervisors, could effectively inhibit
a well-deserved discharge by merely filing, or threatening
to file, a discrimination complaint." Mesnick, 950 F.2d at
828.

Four months has been held insufficiently close for a
causal connection to be inferred. Cooper v. North Olmsted,
795 F.2d 1265, 1267, 1272 (6th Cir. 1986).  Here, the
defendants did not dock Lackiram's pay until June 2003, nor
did they reassign her exclusively to direct care until
October 2003.  This was more than four months after January
2003, the time when Lackiram began to complain about racial
discrimination.  Thus, no causal connection can be inferred
between Lackiram's protected conduct and the defendants'

-22-

employment actions and Lackiram has failed to make out even so much as a <u>prima facie</u> case.

      **C.   Lackiram Has No Evidence On Which A Jury Could Reasonably Infer Actual Malice Or Unnecessary, Unreasonable Or Excessive Publication.**

Lackiram alleges, without any specificity, that the defendants defamed her in violation of state law.  In cases where defamation is alleged, summary judgment procedures are favored.  <u>Mulgrew v. City of Taunton</u>, 410 Mass. 631, 633 (1991).  Statements made by public officials while performing their official duties are conditionally privileged.  <u>Id.</u> at 635.  Unless public officials act with actual malice, <u>Tosti v. Ayik</u>, 386 Mass. 721, 726 (1982); <u>Dexter's Hearthside Restaurant, Inc. v. Whitehall Co.</u>, 24 Mass.App.Ct. 217, 222-223 (1987), or are engaged in "unnecessary, unreasonable or excessive publication," they are immunized from liability.  <u>Bratt v. International Business Machs. Corp.</u>, 392 Mass. 508, 509 (1984).  Lackiram has no evidence that any of the defendants acted with actual malice or that they engaged in unnecessary, unreasonable or excessive publication.  Accordingly, they are entitled to summary judgment on Lackiram's defamation claim.

-23-

## IV.  Conclusion

Summary judgment should be entered on behalf of the defendants.  Lackiram has not demonstrated a prima facie case of either racial discrimination or retaliation, both because defendants have not taken any "adverse employment action" against Lackiram and because there is no evidence on which a jury could reasonably infer any discriminatory or retaliatory animus on the part of defendants.  As for Lackiram's defamation claim, she has no evidence on which a jury could reasonably infer actual malice or unnecessary, unreasonable or excessive publication on the part of defendants.

>DEFENDANTS LINDA MONTMINY, PAT McCARTHY, FAITH KIRKLAND, ROSEMARY BEVINS, RUTH NATHANS, LEILA SARKIS, DIANE ENOX, GERALD J. MORRISSEY, and RON PRESTON,
>
>By their Attorneys,
>
>THOMAS F. REILLY
>ATTORNEY GENERAL
>
>/s/ Charles M. Wyzanski
>Charles M. Wyzanski
>BBO # 536040
>Assistant Attorney General
>One Ashburton Place
>Boston, Massachusetts 02108
>Tel. No. 617-727-2200