UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
**DIANE LACKIRAM,**                 )
                                    )
    **Plaintiff,**                  )
                                    )   C.A. No. 04-12592-GAO
v.                                  )
                                    )
**LINDA MONTMINY, et al.,**         )
                                    )
    **Defendants.**                 )
_____)

## AFFIDAVIT OF FAITH KIRKLAND

I, Faith Kirkland, hereby depose and swear:

1. The statements made in this affidavit are based on my personal knowledge.

2. I have been employed by the Department of Mental Retardation ("DMR") since 1975.

3. At all times relevant to the above-captioned lawsuit, I was DMR's Assistant Director of Human Resources/Labor Relations Specialist for the Northeast Region.

4. Among my duties and responsibilities are the filing and retention of personnel records of employees in the Northeast Region.

5. According to personnel records in the Northeast Region, Diane Lackiram was hired by DMR on August 23, 1981 as a Mental Retardation Worker I ("MRW-I") at the Fernald Development Center ("Fernald"). In 1982, she was promoted

to an MRW-II; in 1989, to an MRW-III; and in 1990, to an MRW-IV.

6.   In January and February 2002, there was a general layoff at Fernald.  Ms. Lackiram, along with Serge Pierre Louis, Ivan Lambert, Jean LaRose and Cheryl Thompson, exercised union bumping rights to transfer to the Hogan Regional Center ("Hogan") as a MRW-IV Administrative Officer (MRW-IV-AO).

7.   Pursuant to the Position Title of an MRW-IV-AO, the duties and responsibilities at a Division One facility such as Hogan would encompass the overall scheduling of direct care staff; the proper implementation of policies; and the indirect supervision of staff through role modeling, demonstration, instruction and evaluation.  MRW-IV-AO's were also required to provide direct care to the residents as needed.

8.   Ms. Lackiram was assigned to two DMR residences located at 1 and 4 Hathorne Circle, in Hathorne, Massachusetts.

9.   On April 23, 2003, Ms. Montminy and I met with Ms. Lackiram to address her April 17 memorandum.  We told her that charges of discriminatory or abusive behavior would be investigated, but that they would have to be specific, setting forth date, time, location and names of witnesses.  As for Nathan's alleged remark that Ms. Lackiram did not fit

in, I told Ms. Lackiram that Nathans denied making any such remark and that, without the names of the witnesses to whom Ms. Lackiram had referred, no further action was warranted. At the time, it should be noted, there were five other MRW-IV-AO's (Ivan Lambert, Jay Glover, Vincent Louissant, Serge Pierre Louis, Jean Larose) and, on her shift alone, at Division I, well over twenty other African American MRW's (including Marjorie Charmevil, Stephan Coriolan, Rolahn Easter, Presline Francois, Gerzino Guirand, Derrick Jones, Kwesi Jones, Lucinda Joseph, Seneque Joseph, Zainab Kamara, Anthony Okananwa, Francisco Paulino, Suzie St. Hillien, Peter Rigicia, Kareen Robinson, Italienne Pierre, Agatha Seruyange, Samson Aroko, Anthony Howard, Natalika Dorsainvil-Josue, Lawrence Dorbor Mulbah, Sorina Prophet).

    10.  On June 25, 2003, Ms. Lackiram left work five hours early and remained out of work through July 3, 2003. Despite repeated requests that she submit medical documentation for sick time, Ms. Lackiram failed to do so with respect to June 26 and 27, for which she was docked five and eight hours respectively, for a total of $191.

    11.  On October 9, 2003, Charles Berfield, Jr., an MRW-II at Hathorne 4, filed a complaint of workplace violence against Ms. Lackiram.  Ms. Lackiram, in turn, filed a workplace violence complaint against Berfeld.  My preliminary investigation did not support any charge of

workplace violence but Ms. Lackiram was removed from all administrative functions and reassigned to direct care pending further review while Berfield was transferred to 1 Hathorne Circle where he had no administrative functions. After a prolonged investigation culminating in a 21-page report dated December 9, 2005, I determined that Berfield and Lakiram acted in an unprofessional and unacceptable manner.

12. On October 15, 2003, Lackiram was out sick. The medical documentation which she later submitted did not cover October 15 and, when clarification was sought from her doctor, Lackiram refused to authorize any contact with him, saying it was a form of harassment and retaliation. Accordingly, Lackiram was not paid for October 15 and docked eight hours of pay or $150.68.

13. On March 17, 2004, Donna Willett, an MRW-IV Administrative Officer at 4 Hathorne, filed a complaint of workplace violence against Ms. Lackiram. On March 22, Ms. Lackiram faxed a counter complaint. Ms. Lackiram was placed on paid administrative leave pending review.

14. I interviewed Willett and all witnesses to the incident other than Ms. Lackiram, who refused to speak with me.

15. On March 26, 2004, I telephoned and then wrote a letter on behalf of Linda Montminy, advising Ms. Lackiram

that the incident with Willett did not rise to the level of workplace violence and that, pending full completion of a review, Ms. Lackiram should report to work at 6 Hathorne Circle on March 30, 2004, where she would no longer be under Willett's supervision but that of Vincent Louissant.

16. Ms. Lackiram refused to return to work and on March 29, 2004 requested the forms necessary for a claim for worker's compensation.

17. On April 14, 2004, Ms. Lackiram requested the forms for leave under the Family Medical Leave Act ("FMLA"). On April 22, Ms. Lackiram submitted to DMR a letter from Psychiatric Nurse Practitioner Lauretta Mona to Lionel Porter (of the law firm of Hrones, Garrity and Hedges), which stated that Ms. Lackiram was under her care for treatment of depression and anxiety, recommending that she not work at this time, and that it would be uncertain how long she would have to remain out of work.

18. DMR approved Ms. Lackiram's request for FMLA leave as of April 14, 2004. This was extended every 30 days until April 14, 2005.

19. On December 10, 2004, Ms. Lackiram filed the above-captioned action in Superior Court.

20. Ms. Lackiram has not returned to work and her employment status remains unchanged due to the pending litigation.

-6-

Signed under pains and penalties of perjury this ___ day of June, 2006.

/s/ Faith Kirkland_____
Faith Kirkland