| POSITION DESCRIPTION, DPA Form 30-State<br>Commonwealth of Massachusetts | POSITION TITLE CODE<br>15-155 |
|---|---|

| 1. POSITION TITLE<br>Mental Retardation Worker IV  Administrative Officer | AGENCY<br>DMR - Hogan Regional Center |
|---|---|

| 2. APPROPRIATION OR AGENCY CODE<br>5930-1000 | POSITION NO. | REQUISITION NO. | SALARY | DATE PREPARED |
|---|---|---|---|---|

### 3. GENERAL STATEMENT OF DUTIES AND RESPONSIBILITIES

Acts as Divisional Supervisor to ensure resident safety, and proper implementation of policies and procedures. Provides ongoing indirect supervision to employees through role modeling, demonstration, instruction, and evaluation. Monitors the environment to facilitate a homelike environment. Coordinates the delivery of services and supports to ensure appropriate and active treatment. Adheres to facility policies and procedures and ensures for proper implementation of it.

### 4. SUPERVISION RECEIVED (Name and title of person from whom incumbent receives direction)

**Division Director**

| 5A. DIRECT REPORTING STAFF | 5B. THEIR STAFF |
|---|---|
| | |

### 6. DETAILED STATEMENT OF DUTIES AND RESPONSIBILITIES

Acts as Divisional Supervisor/AO to insure resident safety, and proper implementation of policy and procedure

- responsible for overall scheduling of direct care staff to maintain adequate coverage according to staffing minimums
- maintains proper staff minimums on a daily basis factoring in variables including, but not limited to sick calls, 1:1 coverage, breaks, floating, overtime, etc.
- assures proper implementation of policies
- informs division director/assistant division director of major issues in a timely manner
- notifies/relates all pertinent issues regarding residents, staff, the environment, etc., at each change of shift to appropriate personnel
- knowledgeable in applicable articles of collective bargaining, i.e., overtime, time off, sick time utilization
- organize the implementation of scheduled medical appointment, haircuts, etc.
- interface with on-site administrators to communicate and receive pertinent information and follows up for resolution.

Assures the implementation of the daily activity schedule throughout the division in order to affirm that active treatment occurs

- functions as a member of the interdisciplinary team attending all required meetings,
- functions as objective manager as required (or delegates when appropriate).
- assists in monitoring staff to assure that the proper materials are in place, training occurs and data is collected on each component of the ISP including leisure activities
- monitors proper implementation of Daily Activity Schedule throughout the division

Responsible for the development and maintenance of a safe, properly repaired and homelike environment

- reports or fill out forms reporting maintenance and equipment issues in a timely manner
- completes safety/sanitation audits of area as required
- develops and maintains in conjunction with team, a safe, comfortable normalized homelike environment
- gives ongoing feedback and training to staff regarding proper, safe use of equipment, materials and chemicals
- assures the proper implementation of 'universal precaution' through training, observation and feedback

Assists in providing supports to individuals as required

- provides direct cares services when needed
- acts as role model to other staff in implementing supports
- interfaces with disciplinary team/attends ISP's as needed
- carries out CTP's as needed

Performs related duties as needed

---

**4. QUALIFICATIONS AT HIRE ( List knowledge, skills, abilities)**

See DPA job specifications

---

**8. QUALIFICATIONS ACQUIRED ON JOB (List knowledge, skills, abilities)**

See DPA job specifications

---

**9. MINIMUM ENTRANCE REQUIREMENTS**

See DPA job specifications

---

**10. LICENSE AND/OR CERTIFICATION REQUIREMENTS**

---

**REMARKS**

---

**SIGNATURE OF APPOINTING AUTHORITY**          **TITLE**

**AGENCY**          **PREPARED BY**

**INITIALS OF INCUMBENT          DATE**          **INITIALS OF SUPERVISOR   DATE**

**To:**     **Linda Montimiy, Facility Director**

**CC:**

**From:**  Dianne S. Lackiram, MRW IV/AO

**Date:**  3/17/03

**Re:**     **Unacceptable/ Unprofessional Behavior**

---

I want to make you aware of a statement, some continued practices and other information which has distraught me and continue to cause me a severe amount of unnecessary work related stress.

As you know, I was bumped here from The Fernald Center a little over a year ago. I realized almost immediately that the supervisors MRW's (III & IV) have a very different role. Some of the responsibilities I have questioned to my supervisors Ms. Ruth Nathans , Division Director and Leila Sarkis, Assistant Director have left me concerned.

Initially, when I came here I had a lot of positive things to say about Hogan and Division and I still do. However, it is a displeasure to say that since I have been a supervisor here, I have observed the following behaviors specifically focused on people of color, African Americans:
- Inconsistencies in the application of policies and procedures
- Disparate treatment
- Discriminatory practices
- Disrespect
- Preferential treatment

On more than one occasion, I brought these concerns immediately to Ms. Ruth Nathans with the hopes of taking the necessary steps for resolution. In addition, being a person of color, in a supervisory capacity I felt strongly that I would be to contribute a lot towards improving this situation and promoting a peaceful environment but now I feel that I have become the latest victim.

Prior to a lengthy meeting I had with Ruth Nathans and Leila Sarkis about staff who was African American being upset about this EPRS along with other legitimate issues which Leila then admitted were errors, Ruth made a very disturbing statement to me in the dining room while in the presence of the staff I supervise. She told me " You don't fit in here!" I immediately asked Ruth to explain her self and what she expects from me as supervisor, she did not answer. I also mentioned to Leila what Ruth did and she also did nothing.

There were other statements made in my presence which I feel were are being down to target me. This is making me extremely uncomfortable and I had planned to meet with the Assistant Director of Human resources, Faith Kirkland until last Thursday when I attended a union meeting. Janet Cook, the President local 1730 asked me " Who did you file a grievance for?" I was baffled, Janet told me that Faith Kirkland told her I filed a grievance on an unknown staff.

1

*April 20, 2003*

I did not file a grievance on anyone nor did I speak with Faith about anything pertaining to the union. This type of false gossip coming from an administrator is also very disturbing. I feel that my name has been labeled enough by the Division I Management and now I know what DCS mean when they say there is no one here who can help us. I certainly hope you can.

Dianne S. Lackiram



*The Commonwealth of Massachusetts*
**Executive Office of Health & Human Services**
**Department of Mental Retardation**
Northeast Region - Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 ● FAX 978-739-0417



EXHIBIT
# 3
Sarlis
5/19/06

**ARGEO PAUL CELLUCCI**
GOVERNOR

**JANE SWIFT**
LIEUTENANT GOVERNOR

**WILLIAM D. O'LEARY**
SECRETARY

**GERALD J. MORRISSEY, JR.**
COMMISSIONER

**AMANDA J. CHALMERS**
REGIONAL DIRECTOR

Date: 4/22/03

Dear Diane Lackerman

Pursuant to the provisions of Article 8 of the Agreement, it is requested that you submit satisfactory medical evidence for your recent time away from work. The reason for this request is as follows:

sick time

Failure to produce such medical evidence by 5/7/03 may result in denial of sick leave compensation for the following dates: 4/18 & 19

In order to be considered satisfactory, the medical evidence must include:

1. the date you were personally examined by a licensed Physician, Physician's Assistant, Nurse Practitioner, Chiropractor or Dentist;

2. the nature of your illness or injury;

3. a statement that you were unable to perform your duties due to the specific illness or injury on the days in question;

4. the prognosis for your return to work;

5. the original signature, on his/her letterhead, of the physician or health care professional who examined you.

If you have any questions, please contact me.

Sincerely,

*Leila Sarlis*

Signature of Supervisor/Manager

cc: Personnel file

weekend shift as hereinafter defined shall receive a weekend differential of 50 cents ($0.50) per hour for each hour worked, provided, however, that no employee shall receive said weekend differential for more than one (1) shift per weekend.

B.       For the purposes of this Section, a weekend shift shall be defined as a shift that commences on or after 9:00 p.m. on Friday and concludes on or before 2:00 a.m. on Monday.

C.       The above hourly weekend differential shall be paid in addition to regular salary for eligible employees when their entire workday is on a weekend shift. Eligible employees who are required to work a weekend shift, or any portion thereof, on an overtime basis, replacing a worker who normally works such weekend shift, will receive an hourly differential pursuant to paragraph A of this Section.

D.       For employees who are required to work a weekend shift as governed by paragraph C of this Section, overtime shall be compensated at the rate of time and one-half of the regular salary rate plus the weekend differential for the number of hours in excess of forty (40) per week worked on such weekend shift.

## ARTICLE 8
## LEAVE

**Section 1.     Sick Leave**

A.       A full-time employee shall accumulate sick leave with pay credits at the following rate for each full calendar month of employment:

| Scheduled Hours per Week | Sick Leave Accrued |
|---|---|
| 37.5 hours per week | 9.375 hours |
| 40.0 hours per week | 10.000 hours |

An employee on any leave with pay or industrial accident leave shall accumulate sick leave credits.

B.       A regular part-time employee shall be granted sick leave credits in the same proportion that his/her part-time service bears to full-time service.

C.       Sick leave shall be granted, at the discretion of the Appointing Authority, to an employee only under the following conditions:

1.       When an employee cannot perform his/her duties because he/she is incapacitated by personal illness or injury.

2.       An employee may use up to a maximum of thirty (30) days per calendar year for the purpose of:

a.       caring for the spouse, child, foster child, step-child, parent of either the employee or his/her spouse, step-parent, brother, sister, grandparent, grandchild, person for whom the employee is legal guardian or a relative living in the immediate household who is seriously ill; or

12

b.    parental leave due to the birth or adoption of a child, to be concluded within twelve (12) months of the date of the birth or adoption. Eligible employees utilizing sick leave under this Section shall not be required to submit a medical certification, unless the Appointing Authority has reason to believe that the birth or adoption claim was not genuine. This leave benefit shall be in addition to the ten (10) days of paid leave set forth in Section 8 (A)(7) below.

3.    An employee may use up to a maximum of ten (10) days of accrued sick leave in a calendar year in order to attend to necessary preparations and legal requirements related to the employee's adoption of a child, except that in no event may an employee charge more than a total of thirty (30) days of accrued sick leave in a calendar year for adoption related purposes.

4.    An employee may use up to ten (10) days of accrued sick leave per calendar year for necessary preparations and/or legal proceedings related to foster care of DSS children, such as foster care reviews, court hearings and MAPS training for pre-adoptive parents. HRD may approve a waiver of the ten (10) day limit if needed for difficult placements. In addition, an employee may use the one (1) day per month of paid leave available to employees for volunteer work under the Commonwealth's School Volunteer or Mentoring programs for the above-cited foster care activities.

5.    When through exposure to contagious disease, the presence of the employee at his/her work location would jeopardize the health of others.

6.    When appointments with licensed medical or dental professionals cannot reasonably be scheduled outside of normal working hours for purposes of medical treatment or diagnosis of an existing medical or dental condition.

7.    When an employee is absent due to the excessive use of alcohol or narcotics, becomes and continues to be an active participant in an approved counseling service program. However, said participation may not mitigate the potential of disciplinary action.

D.    A full-time employee shall not accrue sick leave credit for any month in which he/she was on leave without pay or absent without pay for a total of more than one (1) day.

E.    Upon return to work following a sick leave in excess of five (5) consecutive work days, an employee may be required to undergo a medical examination to determine his/her fitness for work. The employee, if he/she so desires, may be represented by a physician of his/her choice.

F.    Sick leave must be charged against unused sick leave credits in units of one-half hour or full hours, but in no event may the sick leave credits used be less than the actual time off.

G.    Any employee having no sick leave credits, who is absent due to illness shall be placed on leave without pay unless said employee requests use of other available leave time, which is subsequently approved.

H.    An employee who is reinstated or reemployed after an absence of less than three (3) years shall be credited with his/her sick leave credits at the termination of his/her prior employment. An employee who is reinstated or reemployed after a period of three (3) years or more shall receive prior sick leave credits, if approved by the Chief Human Resources Officer, where such absence was caused by:

13

1.      Illness of said employee;

2.      Dismissal through no fault or delinquency  attributable solely to said employee; or

3.      Injury while in the employment of the Commonwealth in the line of duty, and for which said employee would be entitled to receive Workers' Compensation benefits.

I.      A regular part-time employee shall not accrue sick leave credit for any month in which he/she was on leave without pay or absent without pay in•the same proportion that his/her service bears to one (1) day of service of a full-time employee.

J.      Employees requesting sick leave under this Article must notify the designated representative of the Appointing Authority at least one (1) hour before the start of his/her work shift on each day of absence.  In single-shift agencies, employees requesting sick leave under this Article must notify the designated representative not later than fifteen (15) minutes after the start of the work day on each day of absence.  Repeated violations of these notification procedures may result in the denial of sick leave.  Such notice must include the general nature of the disability and the estimated period of time for which the employee will be absent.  Where circumstances warrant, the Appointing Authority or designee shall reasonably excuse the employee from such daily notification.

K.      Where the Appointing Authority has reason to believe that sick leave is being abused, the Appointing Authority may require satisfactory medical evidence from the employee (see Appendix G-1, Request for Medical Verification).  Sick leave abuse shall be defined as the use of sick time for purposes other than those that are listed in Section C above.  This request shall be reduced to writing and shall cite specific reasons for the request.  When medical evidence is requested, such request shall be made as promptly as possible.  To the extent practicable, the employee shall receive prior notice that the Appointing Authority believes he/she is abusing sick leave and that he/she may be required to produce medical evidence for future use of sick leave.

In order to clarify existing practice, satisfactory medical evidence shall consist of a signed statement by a licensed Physician, Physician's Assistant, Nurse Practitioner, Chiropractor or Dentist that he/she has personally examined the employee and shall contain the nature of the illness or injury, unless identified by the medical provider as being of a confidential nature; a statement that the employee was unable to perform his or her duties due to the specific illness or injury on the days in question; and the prognosis for employee's return to work.  In cases where the employee is absent due to a family or household illness or injury, as defined in Section 1(C)(2) of this Article, satisfactory medical evidence shall consist of a signed statement by medical personnel mentioned above indicating that the person in question has been determined to be seriously ill and needing care on the days in question.  A medical statement provided pursuant to this Article shall be on the letterhead of the attending physician or medical provider as mentioned above, and shall list an address and telephone number.  Failure to produce such evidence within ten (10) days of its request may result, at the discretion of the Appointing Authority, in denial of sick leave for the period of absence.

If the illness or injury is identified as confidential in nature, the employee shall submit a completed Confidential Illness Certification from the attending medical provider(s) as specified above. The Confidential Illness Certification (see Appendix G-2), shall contain the medical provider's signed statement that he/she has personally examined the employee, that the employee was unable to perform his/her duties because he/she was/is incapacitated due to illness or injury for the duration of the sick leave period in question, and the prognosis for the employee's return to work.  It shall be on the letterhead of the attending physician or medical provider and shall list an address and

14

telephone number. Failure to produce this certification for a confidential illness within ten (10) calendar days from the date of the request may result in the denial of the sick leave in question.

The medical provider's determination of the employee's incapacitation for duty shall be based upon the provider's assessment of the employee's health condition for the period of sick leave utilized, and by reviewing the employee's specific job duties and responsibilities as outlined in the Form 30 position description. It is the Employer's responsibility to provide the employee with a copy of the Form 30 or current job description and G-1 and G-2 forms.

L.    In extraordinary circumstances, where the Appointing Authority, or the designated person in charge if the Appointing Authority is unavailable, has sufficient reason to believe that an employee has a mental or physical incapacity rendering him/her unfit to perform his/her job or which jeopardizes workplace safety or stability, the Appointing Authority or the designated person in charge may authorize the removal of such employee from the workplace. It is understood that the employee might not recognize or acknowledge such unfitness.

The employee shall receive written notice from the Appointing Authority that specifically states the employee's actions leading to the removal and what is required of the employee before he/she returns to the workplace. Such notice shall be given to the employee at the time of the removal or within five (5) days of the removal.

The employee shall be required to undergo a medical examination to determine his/her fitness for work. The employee, if he/she so desires, may be represented by a physician of his or her own choice, in which case such verification and cost shall be the responsibility of the employee. However, the Appointing Authority shall reserve the right to obtain a second opinion from a Commonwealth designated physician to determine fitness for work. Such cost shall be borne by the Appointing Authority.

Grievances resulting from the denial of an Appointing Authority to return the employee to his/her position after he/she has been removed from the workplace in accordance with this Section shall be processed in an expedited manner at Step II.

M.    No employee shall be entitled to a leave under the provisions of this Section in excess of the accumulated sick leave credits due such employee.

N.    Employees whose service with the Commonwealth is terminated shall not be entitled to any compensation in lieu of accumulated sick leave credits. Employees who retire shall be paid twenty percent (20%) of the value of their unused accrued sick leave at the time of their retirement. Upon the death of an employee who dies while in the employ of the Commonwealth, twenty percent (20%) of the value of the unused sick leave which the employee had personally earned and accrued as of the time of death shall be paid in the following order of precedence, as authorized by the Chief Human Resources Officer upon request of the Appointing Authority of the deceased employee: first, to the surviving beneficiary or beneficiaries, if any, lawfully designated by the employee under the state employees' retirement system; and second, if there be no such designated beneficiary, to the estate of the deceased. It is understood that any such payment will not change the employee's pension benefit.

O.    Sick leave credits earned by an employee following a return to duty after a leave without pay or absence without pay shall not be applied to such period of time.

P.    An employee who while in the performance of his/her duty receives bodily injuries resulting from acts of violence of patients or prisoners in his/her custody, and who as a

15

Q.   result of such injury would be entitled to benefits under Chapter 152 of the General Laws, shall, if entitled under Chapter 30, Section 58 of the General Laws, be paid the difference between the weekly cash benefits to which he/she would be entitled under said Chapter 152 and his/her regular salary without such absence being charged against available sick leave credits, even if such absence may be for less than six (6) calendar days duration.

Q.   The parties recognize that absenteeism and over utilization of sick leave by employees are, where they occur, problems of mutual concern. The parties therefore agree that a Labor/Management Committee shall be formed which shall meet regularly during the life of the Agreement to develop methods of reducing over utilization of sick leave and absenteeism.

R.   The parties recognize that any unnecessary delay by agencies in processing Industrial Accident paperwork is a problem of mutual concern. The parties therefore agree to establish a sub-committee to study the manner in which the various Departments and Agencies process the paperwork associated with the processing and disposition of Industrial Accident claims. Said sub-committee shall make such recommendations to expedite such claims as it shall deem appropriate.

**Section 2.**   **Domestic Violence Leave**

An employee may use up to a maximum of fifteen (15) paid days per calendar year for the purpose of arranging for the care of him/her self, his/her child(ren), domestic partner, elderly parents, and spouse or for attending to necessary legal proceedings or activities in instances where the employee, his/her child(ren), domestic partner, elderly parents and spouse is a victim of domestic abuse and where the employee is not the perpetrator. Said fifteen (15) days are in addition to any other paid leave, which the employee may accrue under the provisions of the Agreement. Any documentation required by the employer to implement leave under this Section shall be kept strictly confidential, and any notations made on an employee status record shall be non-specific.

**Section 3.**   **Paid Personal Leave**

A.   On each January 1, full-time employees on the payroll as of that date will be credited annually with paid personal leave credits at the following rate:

| Scheduled Hours per Week | Personal Leave Credits |
|---|---|
| 37.5 hours per week | 22.500 hours |
| 40.0 hours per week | 24.000 hours |

Such personal leave may be taken during the following twelve (12) months at a time or times requested by the employee and approved by his/her Appointing Authority. Full-time employees hired or promoted into the bargaining unit after January 1 of each year will be credited with personal leave days in accordance with the following schedule:

| Date of Hire or Promotion | Scheduled Hours per Week | Personal Leave Credited |
|---|---|---|
| January 1-March 31 | 37.5 | 22.500 hours |
| | 40.0 | 24.000 hours |
| April 1-June 30 | 37.5 | 15.000 hours |
| | 40.0 | 16.000 hours |
| July 1-September 30 | 37.5 | 7.500 hours |
| | 40.0 | 8.000 hours |

16



*The Commonwealth of Massachusetts*
**Executive Office of Health & Human Services**
**Department of Mental Retardation**
Northeast Region - Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 ● FAX 978-739-0417

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR

**RONALD PRESTON**
SECRETARY
**GERALD J. MORRISSEY, JR.**
COMMISSIONER
**AMANDA J. CHALMERS**
REGIONAL DIRECTOR

TO:        Dianne S. Lackiram, MRW IV/AO

FROM:   Linda Montminy, Facility Director

DATE:    4/30/03

Re:        Meeting on 4/23/03



Thank you for agreeing to meet with me regarding your letter dated 4/17/03. I believe that the meeting was very productive as it allowed you to clarify the contents of your letter and allowed me to clear up any misconceptions and explain the operations at Hogan. I hope that my explanation of the EPRS system and the disciplinary process that is followed statewide was beneficial.

I do want to reiterate my statement that there is to be no tolerance for any discriminatory or abusive behaviors at this facility. At Hogan we have worked very hard to create and maintain a welcoming, tolerant and understanding environment for all staff by embracing the ENGLISH WORKS Program and through diversity training. This effort has been on-going for several years and will continue.

To support our on-going goal of maintaining a healthy environment for all staff, I would ask that any incidents that do not support this be sent to Ruth Nathans, Division Director, who will consult with the Human Resource Office. They will, in turn, investigate all allegations and keep me abreast of the incident that has been reported. In order to look into an incident, the Human Resource Office needs a clear and specific description of the current incident that includes all the following information:
Date and time of incident
Location of the incident
Names of all parties involved
Written statements from all parties involved

In closing, I hope the meeting was helpful and that you understand the operations at Hogan and my continued commitment to maintain a supportive environment for all staff.

CC:     Ruth Nathans, Division Director
         Lynne MacKenzie, Union Steward
         Faith Kirkland, Asst. Director Human Resources





## INTEROFFICE MEMORANDUM

**TO:**       DIANE LACKIRAM, MRW 1V

**FROM:**     LEILA SARKIS, A.D.D.

**SUBJECT:**  PERSONAL TIME

**DATE:**     4/23/03

**CC:**       RUTH NATHANS, D.D.

Your were asked to present adequate documentation to support your emergency personal day on April 16, 2003. You submitted a written letter from yourself, which is not acceptable documentation for support of an emergency personal day.    As you know, an unplanned absence is unacceptable in non-emergency situations.

Please understand that this has a negative impact on the overall operation of the division. Therefore you will be off the pay roll for April 16th.



*The Commonwealth of Massachusetts*
Executive Office of Health & Human Services
**Department of Mental Retardation**
Northeast Region - Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 • FAX 978-739-0417


EXHIBIT # 11
*Sarkis*
5/19/06

ARGEO PAUL CELLUCCI
GOVERNOR

JANE SWIFT
LIEUTENANT GOVERNOR

WILLIAM D. O'LEARY
SECRETY

*NO NOTE*

GERALD J. MORRISSEY, JR.
COMMISSIONER

AMANDA J. CHALMERS
REGIONAL DIRECTOR

Date: 5/23/03

Dear Diane Lackiram

Pursuant to the provisions of Article 8 of the Agreement, it is requested that you submit satisfactory medical evidence for your recent time away from work. The reason for this request is as follows:

Sick

Failure to produce such medical evidence by 6/4/03 may result in denial of sick leave compensation for the following dates: 5/15/03

In order to be considered satisfactory, the medical evidence must include:

1. the date you were personally examined by a licensed Physician, Physician's Assistant, Nurse Practitioner, Chiropractor or Dentist;

2. the nature of your illness or injury;

3. a statement that you were unable to perform your duties due to the specific illness or injury on the days in question;

4. the prognosis for your return to work;

5. the original signature, on his/her letterhead, of the physician or health care professional who examined you.

If you have any questions, please contact me.

X you will be
docked in ck
received on
Personnel file 6/20/03

Leila

Sincerely,


Signature of Supervisor/Manager

I requested
a day on

EXHIBIT # 8
*Sarkis*
5/19/06

# The Commonwealth of Massachusetts
## EMPLOYEE PERFORMANCE REVIEW FORM

NAME: _Mianne MacKiram_     Evaluation Year: _2002-2003_

cy: _DMR_     Location/Unit: _DIV I_

Job Title: _MRW IV_     Functional Title: _MRW IV_

Supervisor: _David Kell Jasri_     Reviewer: _Ruth Nathan_

EXHIBIT # 7
*Nathans*
5/19/06

The employee and supervisor should consult their EPRS Guide for a full explanation of the purpose and the process of employee performance review. Detailed instructions for completing this form are presented in the EPRS Supervisor's Guide.

**A Performance Planning:** Employee and supervisor meet to plan the work for the year
☐ Discuss contributing role of employee in unit     ☑ Discuss and finalize the duties and criteria

Primary Job Duties and Performance Criteria: On the reverse side list the employee's primary job duties from the most current position description and the performance criteria which will be used to evaluate the employee's performance of these duties during the performance period. Copies of the reverse may be used if more space is needed.

Signatures: _____ 4/9/03 _____
  Employee/date          Supervisor/date          Reviewer/date  6/24/03
Comments attached: ☐ yes ☐ no     ☐ yes ☐ no     ☐ yes ☐ no

**B Progress Review:** Employee and supervisor meet to help the employee meet criteria
☐ Discuss progress for each duty     ☐ Assign advisory rating for each duty
☐ Assign advisory rating for overall performance
Progress Review Summary Rating: (meets)   exceeds   below
Supervisor's Comments:

Signatures: _____ 6/19/03 _____
  Employee/date          Supervisor/date          Reviewer/date  6/24/03
Comments attached: ☐ yes ☐ no     ☐ yes ☐ no     ☐ yes ☐ no

**C Annual Review:** Employee and supervisor meet to evaluate job performance
☐ Discuss job performance over whole year     ☐ Rate performance for entire year for each duty
☐ Rate overall performance for entire year     ☐ Formulate a Development Plan at the option
                                                  of the employee—Plan attached: ☐ yes ☐ no
Annual Review Summary Rating: (meets)   exceeds   below
Supervisor's Comments (explain ratings of exceeded or below expectations, unanticipated contributions, areas of improvement and unusual attendance patterns):

Supervisor: _____ 6/19/03
                signature/date

**Employee:** I ☐ agree  ☐ disagree with this evaluation.
**Employee's Comments:**

Employee: _____ 6/19/03
                signature/date

**Reviewer's Determination:** On the basis of my review I have determined that the employee's rating is:
(meets)   exceeds   below
Reviewer's comments:

Reviewer: _____ 6/24/03
                signature/date

**Employee:** I ☐ agree ☐ disagree with the reviewer's determination. Employee's final comments:

Employee: _____ 6/19/03
                signature/date

Attendance: Number of day sick leave used _____   Number of days off the payroll _____   Number of days tardy _____

## - MRW 4:

Performance Criteria: (Performance is successful if:)

s as Divisional Supervisor/AO to insure resident safety, and proper implementation of policy and procedure:

1. Responsible for overall scheduling of direct care staff to maintain adequate direct care coverage according to staffing minimums.
2. On a daily basis maintains proper staffing minimums factoring in variables including, but not limited to, sick calls, 1:1 coverage, breaks, floating, overtime, etc.
3. Assures proper implementation of the following policies (but not limited to)

   - Personal Policies
   - Human Rights Policies
   - Client Services Policies
   - Emergency Procedure Policies
   - Confidentiality Policies
   - Title 19 Sanitation Policies
   - DPPC/Unit Investigations

4. Informs Division Director/assistant Division Director of major issues in a timely fashion.
5. Notifies/relates all pertinent issues regarding residents, staff, the environment etc. at each change of shift to appropriate personnel.
6. Knowledgeable in applicable articles of collective bargaining.

   - Mandatory/voluntary overtime
   - Time off granting policies
   - Sick time usage policies
   - etc.

7. Organize the implementation of scheduled medical appointments, haircuts, etc.
   Interfaces with On-site and on-call administrators to communicate and receive pertinent information and follows up for resolution.

ACTUAL PERFORMANCE:

Progress Review: (meets) exceeds below                Annual Review: (meets) exceeds below
Progress Review Comments:                              Annual Review Comments:

---

## Duty 2 - MRW 4:

Performance Criteria: (Performance is successful if:)

Assures the implementation of the daily activity schedule throughout the division in order to affirm that active treatment occurs.

1. Functions as a member of the Interdisciplinary team attending all required meetings.
2. Functions as objective manager as required (or delegates when appropriate).
3. Supervises MRW III's to assure that the proper materials are in place, training occurs and data is collected on each component of the ISP including leisure activities.
4. Monitors proper implementation of Daily Activity Schedule throughout the division.

ACTUAL PERFORMANCE:

ess Review: (meets) exceeds below                Annual Review: (meets) exceeds below
ess Review Comments:                             Annual Review Comments:

MRW 4:

mance Criteria: (Performance is successful if:)

Responsible for direct supervision of MRW's of a lower grade.

1. Directly observes, supervises and evaluates the performance of assigned MRW's through the use of the EPRS system and supervision.
2. Participates in the selection process of MRW's as required.
3. Observes MRW 3's performance on a regular basis and provides feedback to appropriate person as needed.
4. Assists MRW 3's and Assistant Division Directors with supervision/progressive discipline issues as needed.

**ACTUAL PERFORMANCE:**
Progress Review:  (meets)  exceeds  below
Progress Review Comments:

Annual Review:  (meets)  exceeds  below
Annual Review Comments:

*Reports any issues regarding OC in a timely fashion*

---

4 - MRW 4:

...ormance Criteria: (Performance is successful if:)

Responsible (with dorm team) for the development and maintenance of a safe, properly repaired and homelike environment.

1. Reports or fills out forms reporting maintenance and equipment issues in a timely manner.
2. Completes safety/sanitation audits of area as required.
3. Develops and maintains in conjunction with team, a safe, comfortable, normalized homelike environment.
4. Gives ongoing feedback and training to staff regarding proper, safe use of equipment, materials and chemicals.
5. Assures the proper implementation of "universal precautions" through training, observation and feedback.

**ACTUAL PERFORMANCE:**
Progress Review  (meets)  exceeds  below
Progress Review Comments:

Annual Review:  (meets)  exceeds  below
Annual Review Comments:

*Reports any safety/sanitation issues in a timely manner.*

# EMPLOYEE DEVELOPMENT PLAN

NAME: _____    Supervisor: _____

Agency: _____    Location: _____

Position: _____

Evaluation Year: _____    Date: _____

**Goals:** (what the employee is working to accomplish)

**Plans:**

| DEVELOPMENT ACTIVITY | LOCATION | PLANNED DATE(S) |
|---|---|---|
| (Which development activity will be done) | (Where development activity will be done) | (When will development activity begin and end) |

**Employee Comments:**

_____    _____
**Employee's Signature**                **Date**

**Supervisor's Comments:**

_____    _____
**Supervisor's Signature**                **Date**

**Reviewer's Comments:**

_____    _____
**Reviewer's Signature**                **Date**

# INFORMAL WARNING

EXHIBIT #7
Natrians
5/1/06

EXHIBIT #9
Sarkis
5/19/06

FACILITY: __REGION III__                    LOCATION: D, U I

Diane hackiram   M.R.W.II   2nd   Sun/mon
**EMPLOYEES NAME**      **TITLE**   **SHIFT**   **DAYS OFF**

REASON FOR WARNING: _Unacceptable Job performance_

SPECIFIC DETAILS (ATTACHED DOCUMENTATION):

SPECIFIC DETAILS (ATTACH DOCUMENTATION):

On 6/24/03 I was doing rounds at 4HC, upon
entering apt # you were on the phone outside the
kitchen, their were individuals & staff present.
You were making a personal phone call complain
about the job and working under this condition
This is unacceptable, all personal phone calls
are done off the apartment and on your break.

CORRECTIVE ACTION AND WARNING:
Further disciplinary action will occur if
this continues

EMPLOYEES COMMENTS:

_signature_   7/11/03
**SUPERVISORS SIGNATURE**   **DATE**

I disagree with this form
Diane S. hackiram
**EMLOYEES SIGNATURE**   **DATE**
Please see attached rebuttal
DATE 7-12-03

_signature_   7/11/03
**MANAGER OR DESIGNEE**   **DATE**

_signature_   7/11/03
**REPRESENTATIVE**   **DATE**
EEO

Note:** Your signature indicates that the contents of this memorandum have been reviewed with you.
** This informal warning __will not__ become part of your personnel file __unless__ further violations occur.

Refused to sign 7/11/03   I did not refuse to
sign I said I would

**The Commonwealth of Massachusetts**
**Executive Office of Health & Human Services**
**Department of Mental Retardation**
Northeast Region - Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 • FAX 978-739-0417

ARGEO PAUL CELLUCCI
GOVERNOR

JANE SWIFT
LIEUTENANT GOVERNOR

WILLIAM D. O'LEARY
SECRETARY

GERALD J. MORRISSEY, JR.
COMMISSIONER

AMANDA J. CHALMERS
REGIONAL DIRECTOR

Date: 7/15/03

Dear Diane Lackiram:

Pursuant to the provisions of Article 8 of the Agreement, it is requested that you submit satisfactory medical evidence for your recent time away from work. The reason for this request is as follows:

_____ sick time

Failure to produce such medical evidence by 7/29/03 may result in denial of sick leave compensation for the following dates: 6/26(5"), 6/27, 7/3
The note you gave covered 4/28 to 7/2
In order to be considered satisfactory, the medical evidence must include:

1. the date you were personally examined by a licensed Physician, Physician's Assistant, Nurse Practitioner, Chiropractor or Dentist;

2. the nature of your illness or injury;

3. a statement that you were unable to perform your duties due to the specific illness or injury on the days in question;

4. the prognosis for your return to work;

5. the original signature, on his/her letterhead, of the physician or health care professional who examined you.

If you have any questions, please contact me.

Sincerely,

_Leila Sacks_, ADP,
Signature of Supervisor/Manager

cc:   Personnel file

# Harvard Pilgrim
## Health Care *of New England*

# WORK NOTES

Date: _7/2/03_

To Whom It May Concern: _Dianne Lackivany_ was seen here today.

He/She will be able to return to work/school on _7/3/03_.

The following restrictions should be observed from

_____ through _____ :

_____ _A_ _was seen on 6/24,_

_____ _was given indication that_

_____ _Can Cause dizziness._

He/She has a follow-up appointment on _____.

Remarks: _____

_____

_____

Signed: _____ _(Tho MD)_

Harvard Pilgrim Health Care, Inc.
Harvard Pilgrim Health Care of New England, Inc.
Nashua Medical Group
173 Daniel Webster Highway South
Nashua, NH 03060

**Nashua Medical Group**    150615
173 Daniel Webster Highway South, Nashua, New Hampshire 03060-5230
Telephone (603) 891 - 4500

LACKIRAN, DIANNE  11/29/1959 F
27 NEWBURGH RD
NAME: NASHUA, NH  03062 #:HP0167370                    DATE: 6/28/03
CLIN: Arya  R&R:5465
ADDRESS: H: 6038386624 W: 6178943600                   AGE:

**R**

Dx - Posterior cervical muscle strain
     LBP

PT : Please evaluate & treat

_____ Deepa Arya ___ M.D.

**DEEPA ARYA, M.D.**
✚ HarvardPilgrim
HealthCare

REFILL
0 1 2 3 5 P.R.N.                    PLEASE LABEL
80100 (8/01)

---

**Nashua Medical Group**    150618
173 Daniel Webster Highway South, Nashua, New Hampshire 03060-5230
Telephone (603) 891 - 4500

LACKIRAM, DIANNE  11/29/1959 F
27 NEWBURGH RD
NAME: NASHUA, NH  03062 #:HP0167370                    DATE: 6/28/03
CLIN: Arya  R&R:5465
ADDRESS: H: 6038386624 W: 6178943600                   AGE:

**R**

Klonipin  0.5 mg
one po qd - bid pm anxiety
                    # 50 (fifty)

Can cause sedation  _____ Deepa Arya ___ M.D.
         BA3935105

**DEEPA ARYA, M.D.**
✚ HarvardPilgrim
HealthCare

REFILL
0 1 2 3 5 P.R.N.                    PLEASE LABEL
80100 (8/01)

---

**Nashua Medical Group**    150614
173 Daniel Webster Highway South, Nashua, New Hampshire 03060-5230
Telephone (603) 891 - 4500

LACKIRAM, DIANNE  11/29/1959 F
27 NEWBURGH RD
NAME: NASHUA, NH  03062 #:HP0167370                    DATE: 6/28/03
CLIN: Arya  R&R:5465
ADDRESS: H: 6038386624 W: 6178943600                   AGE:

**R**

Valium  5 mg
one po HS pm muscle spasm
                    # 30 (Thirty)

Can cause sedation  _____ Deepa Arya ___ M.D.
         BA3935105

**DEEPA ARYA, M.D.**
✚ HarvardPilgrim
HealthCare

REFILL
0 1 2 3 5 P.R.N.                    PLEASE LABEL
80100 (8/01)



**Harvard Pilgrim**
**Health Care** *of New England*

# WORK NOTES

Date:  7|25|03

To Whom It May Concern:                                    6|28|03
_Diaane Jackiram ( 11|29|59 )_  was seen here ~~today~~.

H̶e̶/She will be able to return to work/school on _7|3|03_ .

The following restrictions should be observed from
_6|25|03, 6|29, 6|30,_  through _7|1, + 7|2_ :

_____

_____

_____

He/She has a follow-up appointment on _____

Remarks: _Pt was here on 6|25|03 and_
_was given medication that can cause_
_drowsiness._

_____

Signed: _DeepaArya_   ( DEEPA ARYA )

Harvard Pilgrim Health Care, Inc.
Harvard Pilgrim Health Care of New England, Inc.
Nashua Medical Group
173 Daniel Webster Highway South
Nashua, NH 03060

## INTEROFFICE MEMORANDUM

**TO:**        DIANE LACKIRAN

**FROM:**    LEILA SARKIS, A.D.D.

**SUBJECT:**  DOCTORS NOTE

**DATE:**     8/1/03

**CC:**        RUTH NATHANS, D.D.

YOU WERE ASKED ON 7/15/03 TO SUBMIT A DOCTORS NOTE FOR BEING OUT SICK ON JUNE 26, JUNE 27 AND JULY 3RD. The note you submitted only covered June 28th to July 2nd indicating you could return to work on July 3rd. Therefore you will be NOP'ed for 5hrs on June 26th, 8hrs on June 27th and 8 hrs on July 3rd. Attacked is the letter you received asking for those specific days and your doctors note that you submitted.


**Harvard Community Health Plan**

RECEIVED

AUG 1 1 2003

HUMAN RESOURCES

Date: _8/7/03_

To whom it may concern:

_____ Diane Lackiram (11/29/59) _____ was seen here today. 6/26/03

He/She will be able to return to work/school on _____

The following restrictions should be observed from

____ _____ through _____ :

_____ _____

_____ _____

_____ _____

He/She has a follow-up appointment on _____.

Remarks: _Out of work 6/26/03 to 7/4/03_
_Pt was here on 6/26/03 and was given_
_medication that can cause drowsiness_

_____ _____

Signed _____ Deepa Arya (DEEPA ARYA)
8/7/03

**Harvard Community Health Plan, Inc.**
**Harvard Community Health Plan of New England, Inc.**

Nashua Medical Group
173 Daniel Webster Highway South
Nashua, NH  03060

p _____ I _____    Union & Local # __1730__    Bargaining Unit # __9__

# GRIEVANCE REPORT

Grievant(s): __Warne S. LACKIRAM__    Soc. Sec. #: __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__

Job Title: __Mental Retardation Worker 4__  Agency: __DMR__    Facility/Region: __Hogan Regional__

Work Location: __4 Hawthorne Circle__    Agency Start Date (if known): _____

Manager: __Leila Sarkis__

Employer is in violation of Article(s) __8, 34__    and other relevant provisions of the Agreement

## Statement by Grievant or Union

The "statement" should include: (1) nature of the contract violation, i.e. what action did the employer take or fail to take, which violated the Contract; (2) the date(s) of the violation and as been appropriate as in promotions, demotions, transfers, reassignments, etc., the relevant title(s) and work location(s). (Use additional sheets of paper, if necessary.)

To be made whole from denial of sick time
on 6/26/03, 6/27/03 & 7/3/03. Monies being
collected from Ms. LACKIRAM on 9/12/03
and no later than 9/30/03.

## Relief or Remedy Sought

To be made whole.

__Warne S. Lackiram__    __9-25-03__    __Sam E. Cook__    __9.30.03__
Grievant's Signature    Date    Steward/Union Rep. Signature    Date

In accordance with Articles 23 and 23A, all disciplinary grievances must also include the following completed form.

## WAIVER OF RIGHT TO APPEAL DISCIPLINARY ACTION

I wish to submit the attached grievance under Article 23A, Grievance Procedures and Article 23, Arbitration of Disciplinary Action, appealing my demotion, suspension or discharge effective on _____ and pursuant to Article 23, Section 4 of the Agreement between the Alliance and the Commonwealth of Massachusetts dated _____. I hereby waive any and all rights to appeal this disciplinary action to any other forum including the Civil Service Commission. I have not initiated any other appeal of this disciplinary action.

_____    _____    _____
Date    Employee Signature    Union Representative Signature

*The Commonwealth of Massachusetts*

**Executive Office of Health & Human Services**
**Department of Mental Retardation**
**Northeast Region - Hogan Regional Center**
**P.O. Box A - Hathorne, Mass. 01937**
TEL 978-774-5000 ● FAX 978-739-0417

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR

**RONALD PRESTON**
SECRETARY
**GERALD J. MORRISSEY, JR.**
COMMISSIONER
**AMANDA J. CHALMERS**
REGIONAL DIRECTOR

October 7, 2003

Janet Cooke, President
AFSCME – Local 1730
P.O. Box 18
Hathorne, MA 01937

Dear Ms. Cooke:

I am in receipt of your grievance filed on behalf of Dianne Lackiram, which states that she is aggrieved for having been denied sick leave.

In review, I find that Ms. Lackiram's sick leave was appropriately denied. Therefore, this grievance is denied.

Sincerely,

Faith M. Kirkland
Assistant Director of Human Resources

cc:   Ruth Nathans
      File





## Formal Warning

| Employee Name and Title | Shift | Days off |
|---|---|---|
| Diane Lackiram, MRW IV | 2:45 to 11:15 | Sun/Mon |

**Reason for Warning**: You have a long history of counseling and suspensions for overall unacceptable attendance during your tenure at another facility. Since your transfer to this facility, you have been accommodated in order to meet her personal needs, i.e.: changing her days off from Sun/Mon to Tue/Wed. Additionally, you have been granted the opportunity to take a "first lunch" in order to come in later. However, despite this, you continue to have days off without authorization and tardiness. This is specified below:

**Specific Details:** You have been late or absent without proper documentation on the following days:

2/7/03 - .50 nop (30 minutes)
3/19/04 – 1 hr nop
4/10/03 - .75 nop (45 minutes)
4/16/03 – 8 hrs nop
5/3/03 - .667 nop (40 minutes)
5/7/03 - .25 nop (15 minutes
5/15/03 – 8hrs nop
5/21/03 - .167 nop (10 minutes)
5/22/03 - .083 nop (5 minutes)
6/18/03 - .167 nop (10 minutes)

7/9 - 10 min
7/10 - 45 min
7/11 - 15 min

**Corrective Action:** This is a formal warning that will be included in your personnel file. Understand that your absenteeism negatively affects the individuals, your co-workers and the organization as a whole. If it is determined that you continue to have unacceptable attendance you will be subject to further disciplinary action up to and including suspension or termination from your position.

Please see Attached
Rebuttal letter date 7-12-03

_____
Employee Signature            date

_____ 7/11/03
Manager/Supervisor Signature   date

_____ 7/11/03
Union Rep. Signature        date

EEO did not refuse to sign



## The Commonwealth of Massachusetts
## Commission Against Discrimination
One Ashburton Place , Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

MCAD DOCKET NUMBER: 03BEM02018          EEOC/HUD CHARGE NUMBER: 16CA302253
FILING DATE: 08/05/03                   VIOLATION DATE: 08/05/03

Name of Aggrieved Person or Organization:
Dianne S Lackiram
27 Newburgh Rd.
Nashua, NH 03062
Primary Phone: (603)888-8524 ext.

Named is the employer, labor organization, employment agency, or state/local government agency who
discriminated against me:
Department of Mental Retardation
Attn: Human Resources
450 Maple St.
Danvers, MA 01923
Primary Phone: (978)774-5100 ext.

No. of Employees:          254

Work Location: Mentally retarded institution

Cause of Discrimination based on:
Race, Color, Black (Non-Hispanic); Other, Paragraph 4, Retaliation.

The particulars are:
I, Dianne S Lackiram, the Complainant believe that I was discriminated against by Department of Mental
Retardation, on the basis of Race, Color, Other. This is in violation of M.G.L. 151B Section 4 Paragraph 1,
4 and Title VII.

On or about January 2002 I was transferred to Hogan Regional Center ("Hogan"), with the Department of
Mental Retardation. Immediately after I arrived at Hogan, I noticed policies being applied differently to
African Americans. The few Caucasians at entry-level positions get more lenient treatment. For instance,
an employee under my supervision received a low performance rating from a supervisor from another shift
and I asked for documentation supporting the evaluation. I was told that it was not my job to address his
low performance rating, even though I directly supervised the employee and Human Resources admitted
that the low evaluation was a mistake. Also, I am the only African American supervisor on the second
shift, the Division One Director, Ruth Nathan, informed me that I did not fit in.

I wrote a formal letter to the facility director, Ms. Montminy, detailing the disparate treatment of African
Americans. After she received the letter we met and I told her that I expected acts of reprisal from my boss
because she had seen the letter. As expected the letter went out, I noticed different treatment. For example,
I was denied a request for emergency personal leave even though the facility had more than adequate
coverage. Before the letter,  never had problems receiving emergency personal leave and was not required
to submit documentation. The facility gave me a performance evaluation that was suppose to be given
throughout the year, in three stages all on the same day. Lila Santkis did not sign the evaluation, the other
Unit D rector, Dotty Dunn, signed the performance review although I had no dealings Ms. Dunn. I
received passing marks in all areas, however, immediately after the evaluation a new performance
evaluation for the next year was started on that same day. After the evaluation, I started receiving several

MCAD Docket Number 03BEM02018, Complaint

letters of discipline for attendance from Lila Sautkis, and unacceptable job performance for taking a work related call at work. Other staff members have attendance similar to mine and have used the phone without being disciplined. I have had to take more work of recently for appointments with my doctor because of emotional stress brought on directly from the harassment and have doctor's notes for the absences. I am being watched constantly at work by my immediate supervisor for reasons to add discipline incidents to my employee file. My work reputation is being tarnished because I complained about race discrimination to the facility director.

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 8/5/2003.

NOTARY PUBLIC: _Carol A Mosca_

SIGNATURE NOTARY PUBLIC: _Carol A Mosca_
MY COMMISSION EXPIRES: _9/14/2007_

MCAD Docket Number 03BEM02018, Complaint

Diane Lackiram
MCAD Complaint

Race discrimination;

1. **General complaint that A/A receive disparate treatment;** Caucasians at entry level get more lenient treatment.

   a. An employee under DL's supervision received a low performance rating from a supervisor from another shift and DL asked for documentation supporting this evaluation. DL was told that it was not her job to address his low evaluation; Human Resources admitted the low score was a mistake.

   b. DL is the only A/A "supervisor" on the second shift and Ruth Nathans told DL that she "did not fit in."

2. **Letter to Linda Montminy;** DL wrote a letter to Linda Montminy, detailing the disparate treatment of A/A. DL met with Linda Montminy. During this meeting, DL said she expected retaliation for writing the letter. After the letter went out, DL noticed disparate treatment.

   a. DL was denied a request for emergency personal leave even though the facility had more than adequate coverage. Before the letter, DL never had problems receiving emergency personal leave and was not required to submit documentation.

3. **Performance Evaluation;** The facility gave DL a performance evaluation which, while it was supposed to be done at three different stages throughout the year, was done on one day. Leila Sarkis did not sign the evaluation; Dorothy Dunn, with whom DL had no dealings with, instead signed it. DL received passing marks in all areas. Immediately after the evaluation, a new performance evaluation for the next year was started on the same day.

   a. After these evaluations, Leila Sarkis gave DL several letters of discipline for attendance, unacceptable job performance for taking a work related call at work. Other employees have attendance similar to DL's and have used the phone without being disciplined.

4. **Harassment.** DL interprets the above and requests for doctors' notes for her absences as harassment. DL has had to take off work for appointments with her doctor because of emotional distress caused by this harassment, which also includes "being watched constantly at work by her immediate supervisor for reason to add discipline incidents to her employee file."

Dottie, Ruth, whoever it concerns

On the evening of Oct 9, 2003, there was a major problem. It all started when Miguel Torres came to cover the rest of the shift on Apt G, well during the course of his day he forgot an ADL, Diane called apt G @ about 9pm, explaining how the ADL was not done, Miguel immediatly went downstairs and took care of the situation. After that, from what i gathered Miguel and Anthony O had a conflict after the problem. Miguel reentered apt G, a little upset. So now a half hour later Diane calls apt G, Miguel answered and she told him, she was sending Anthony O up to apt G to talk to Miguel, which i believed was a bad idea, because the problem did not start on my apartment, if she wanted them to reconcile, that is something i believe should be done elsewhere not in the residence where my guys are sleeping.. So i called Diane and reccommend to have

this taken care of else where,
She replied to me, exactly, "You
and Miguel need to get your
stories straight, i told Miguel to
come down here." Before she could
hang up on me, Anthony O.
walked in the door?! for what
reason i don't know. But the
main problem here is that after
i gave her my opinion on what
to do she absolutly flipped, She
started by telling Miguel i
was a FxxxIng A-hole, so i
confronted her and asked if
she was serious, she denied the
comment, but became very aggresive
with me, getting about 6 inches
from my face, her saliva hit me
in the face as she was ranting
and raving. And then she commented
on how i was nothing to Hogan
and in front of Ralphn, italian,
Natalie, Steven, and Tony, her
exact comments, "were there is
something wrong with you, No wonder
your on medicaton" know what
kind of MRW III is gonna act

like this. This is the second in a month she has pryed in my business and hurt my feelings. Rolahn Easter witnessed the whole scenario, and has agreed to write a statement and anything else required. After the problem, Lee entered the building and explained Miguel and i had to leave via your orders; quite frankly i didnt understand, and then Lee said if i didnt leave the Police would come?! For what i dont know, for me being verbally abused by a person we are suppose to mimic, Deane has a serious problem, and should not be running a medical facility. Its totally ludacris, and i hope this can be reconciled, because NOBODY has the right to treat someone like that, i Put my blood, sweat, + tears into my job, and her outburst was completely unnecessary and for a lack of a better term childish. i understand you were called by

her, and if i had access to speak with i would of, it is a total disgrace a supervisor can act like this and spread my personal business, and ~~she~~ hurt my feelings and ruin my weekend i really hope the proper channels are used here, and i will be contacting a union rep. because she needs to be talked to, because i refuse to let this go. She was far out of hand, im not saying i was an angel, but all i did was voice my opinion or try too, because she told me to sit down and shut up as she continued on until i left to take care of my apt. MRK II or just a number to you, but i am a person, i will not tolerate a person like this, when i had nada to do w/ it.

Chaz M Berfield Jr
MRK II

Rolann Easter witnessed the whole scenario, and she will be more than cooperate after what she saw.

TO: Fina Fortune, Nursing Director

From: Diane S. Lackiram, MRN III/AP

Date: 10-9-03

Re: Unacceptable Behavior

RECEIVED
DEC 09 2005
HUMAN RESOURCES

On 10-7-03 a Staff Member from the 11pm to 7am Shift called out Late At the Last minute. (Carrie)

Charz Batield was next in line on the list to work forced mandatory overtime. I immediately phone Charz and told him he needed to work until Carrie comes to work.

Charz told me he passed in his paperwork to Dolta Dun Assistant Unit Director and is considered exempt.

I told Charz according to the Books, he is not exempt. I told him to straighten the matter out the next day with Dolta.

I told Charz he needed to wait 15 minutes At 9Am. He hung up the phone. Charz told me he can not wait. He was Class Charz did not check out with Ivan or Anyet He left the building.

On 10-8-03 I spoke with Dottie and confirmed the status of Chaz Barfield's request for exemption. It was not approved. I immediately phoned Chaz to make him aware of the decision.

Chaz told me "I don't know what Dottie told you but I know what she will tell me" and hung up the phone.

I repeated that statement to Dottie.

I saw Chaz in passing later and he appeared to be upset and somewhat disturbed.

I was concern about his disposition and ask a coworker Roslyn Easter if she notice a change in Chaz.

Chaz was abrupt, abrasive, rude has had bad attitude according to John Kelly with numerous staff. After I addressed my concerns with John Kelly I wanted to find a way to help chaz john kelly

I have never had a problem with Chaz in the past other than his refusal to work mandatory overtime twice in the past. The previous incident was reported to Leila Sakis Assistant Division Director. During the incident which was reported to Leila, She told me I would receive a medical note from Chaz which I never did. He was never exempt.

A comment was made to me by Richard Easter. Richard told me that Chaz has issues and one of them was the incident that happen on 6/25/03 at Hawthorne Circle with resulted in the death of one of our consumers. He was on medication for it. Richard admitted to Chaz told her he doesn't know what is wrong. He just explodes. He can't control the disruptive behavior clearly indicated to me there is in fact a problem.

I ask, Carl is he was only medication. His temper escalated as he would not allow me to explain. The fact is he left the apartment after giving him and instructed to verbally attack me. I was very frighten as I thought he would become violent. I was uncomfortable and called Lee Colons and reported the matter to Dottie Ann.

I did not feel comfortable leaving the building until 4:30 am. I had to call my brother Jose to come and drive home with me. My brother also works the nights shift and I waited for him to get there for safety precautions.



*The Commonwealth of Massachusetts*
**Executive Office of Health & Human Services**
**Department of Mental Retardation**
Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 ● FAX 978-739-0417

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR
**RONALD PRESTON**
SECRETARY

**GERALD J. MORRISSEY, JR.**
COMMISSIONER
**DIANE ENOCHS**
ASSISTANT COMMISSIONER FOR
FACILITIES MANAGEMENT
**LINDA MONTMINY**
FACILITY DIRECTOR

December 3, 2003

Ms. Dianne Lackiram
27 Newburgh Road
Nashua, NH   03062

Dear Ms Lackiram:

As you are aware, attempts have been made on three separate occasions to clarify the medical documentation you presented to support your use of sick leave credits for the date of October 15, 2003. The final attempt was a request to contact your physician directly to rectify this situation.

I have received your letter dated November 25, 2003 which denies that request. The medical documentation you presented to date does not address your absence on the date of October 15, 2003; therefore, I am denying the use of sick leave credits for that date. By copy of this letter, I am directing the Payroll Unit to recover the payment made to you for the date of October 15, 2003 from your payroll check for the weekending December 27, 2003 (received on January 2, 2004) and to re-credit you with 8 hours of sick leave.

Sincerely,

Linda Montminy
Facility Director

LM/pmm

cc:   Diane Chigas
      Personnel File

*The Commonwealth of Massachusetts*

**Executive Office of Health & Human Services**
**Department of Mental Retardation**
Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 ● FAX 978-739-0417

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR
**RONALD PRESTON**
SECRETARY

**GERALD J. MORRISSEY, JR.**
COMMISSIONER
**DIANE ENOCHS**
ASSISTANT COMMISSIONER FOR
FACILITIES MANAGEMENT
**LINDA MONTMINY**
FACILITY DIRECTOR

January 16, 2004

Ms. Dianne Lackiram
27 Newburgh Road
Nashua, NH   03062

Dear Ms Lackiram:

In a letter dated December 3, 2003 (copy attached), you were advised that an overpayment for the date of October 15, 2003 would be recovered from the payroll check you received on January 2, 2004 (for the pay period ending December 27, 2003). Through administrative error, the recovery did not occur in the payroll check you received on January 2, 2004 and is being deducted from the payroll check you received today (for the pay period ending January 10, 2004) as follows:

8 hours @ 18.8355/hour - $150.68 gross amount of deduction

Please accept my apologies for any inconvenience this error may have caused you.

Sincerely,

Patricia M. McCarthy
Director of Human Resources

pmm

cc:    Personnel File

# AMERIDENT DENTAL DRACUT

## DRACUT MEDICAL CENTER

505 Nashua Road
DRACUT, MA 01826

(978) 957-5733

FAX (978) 957-1830

This is to certify that: _Dianne Lackiram_

Was treated by Amerident Dental by me and that it is my
recommendation that he/she is:

( ) Able to return to work/school

(✓) Not able to return to work/school until _10_ / _16_ / _03_.

( ) Not able to participate in Phys. Ed classes until ___/___/___.

( ) Able to do only light work until ___/___/___.

( ) Limitations as follows:

_____

_____

Sincerely,

_signature_
Doctor's Signature

_10/16/03_
Date

# AMERIDENT DENTAL DRACUT

### DRACUT MEDICAL CENTER

505 Nashua Road
DRACUT, MA 01826

(978) 957-5733

FAX (978) 957-1830

This is to certify that: _Dianne Lackiram_

Was treated by Amerident Dental by me and that it is my
recommendation that  he/she is:

( )   Able to return to work/school

( ✓ )   Not able to return to work/school until _10_ / _16_ / _03_

( )   Not able to participate in Phys. Ed classes until ___/___/___.

( )   Able to do only light work until ___/___/___.

( )   Limitations as follows:

_Patient was seen on 10/13/03 and was_
_prescribed medication that would be taken at_
_work._     _Dr. L. Schu_  10/03

Sincerely,

_Dr. L. Schutt_                    _10/16/03_
Doctor's Signature                 Date

# AMERIDENT DENTAL DRACUT

## DRACUT MEDICAL CENTER

505 Nashua Road
DRACUT, MA 01826

This is to certify that: _Dianne Lackiram_

Was treated by Amerident Dental by me and that it is my recommendation that he/she is:

( )  Able to return to work/school

(✓)  Not able to return to work/school until _10_ / _16_ / _03_.

( )  Not able to participate in Phys. Ed classes until ___/___/___.

( )  Able to do only light work until ___/___/___.

( )  Limitations as follows:

Patient present at his office on 10/13/03 and was treated on the same day.
10/14/03 Patient called and was in pain.
Sincerely,  Patient on antibiotic and returned for treatment on 10/16/03

_Dr. L. Schwab_
Doctor's Signature

_10/16/03_
Date

Donna
Comp

9-17-04

To whom it may concern,

At 9:15 while trying to set up
my shift at the front desk
Mrs. Jackram came up to
the front desk shouting at
me that Marissa Paulino
should not be marked
15 late her statement to
me was "Donna you pull
this all the time" but not
for much longer pointing
her finger at me.
I did not say any-
thing back to her because
as usual she turned and
walked away

I'm getting to the point
where I feel she is
harass Harassing me
at the workplace. Mrs
Jackram is out of control,
intimidating, hostile & offensive.
Donna Willett
MRW IV 2nd shift

Tuesday, March 23, 2004  2:00 AM    To: Faith Kirkland    From: Lackiram

*Diane Lackiram's*
*counter complaint*
*2 pages*

**TO:** Linda Montminy, Facilities Director
**FROM:** Dianne S. Lackiram
**DATE:** 03/18/04
**RE:** Workplace Violence and Unacceptable Behavior- Donna Willett, AO

On 3/16/04, I arrived at the facility at 2:50 PM, I entered shift report and the clock was reading 3:00 PM, which was 5 minutes ahead of time and later explained to Dottie Dunn that there continues to be a problem with parking. I previously sent a note on 3/5/04 to Linda Montminy, Rosemary Bevins, Dottie Dunn and Leila Sarkis stating that the clock in the shift report room was ahead by 5 minutes.

On 3/17/04, I entered shift report room according to the time I have accurately at 2:45 PM, the two clocks were ahead of time by approximately 5 minutes. I observed Marisol Paulino MRW2 entering at 2:50 PM according to accurate time; the two clocks in the shift report room were reading 2:55 PM and 2:57 PM

Marilyn Mayer informed Marisol that Donna Willett marked her 15 minutes late which made Marisol upset. I called Donna and asked her what was she docking me for on 3/16/04, and she replied; "17 minutes". I told her that this is a mistake and she hung up the phone. In a previous meeting 1/6/04 with Rosemary Bevins, I was told that if there are any issues of time, I was to go directly to Donna Willett. I went downstairs to the AO desk and told Donna that Marisol is very upset that she was being docked 15 minutes since her state of mind at that time was not conducive for optimum client services and stated to her she is docking me 17 minutes on 3/16/04 which is not correct. I also told Donna that when Marisol walked into shift report room, she was not 15 minutes late, I witnessed the time. At that time Donna appeared hostile and gave me a threatening look.

I immediately informed Dottie Dunn about the situation and I left voice mail messages for the following people; Pat McCarthy, Rosemary Bevins, and Faith Kirkland about what continues to take place.

Donna then called the Apartment and she said to me in an abrasive tone, " Is Marisol there?" I replied that she was doing showers and in a threatening tone Donna said," Tell her to call me"

Donna then called a second time about 20 minutes later and in similar tone as the previous call, said "Is Marisol there?" I told her she was busy with the clients in the bathroom.  I was now concerned for my personal safety due to her earlier behavior.

However, after about 15 minutes later Donna arrived on Apartment H. She went into a client's bedroom where Marisol and Jenny were and shut the door. A few minutes later, as I approached the hallway leading to the bathrooms to put soiled socks in the hamper, I observed Donna Willett blocking the bathroom door exposing the two clients. There was a male and female client in the same bathroom. The male client was on the toilet; the shower curtain separating the toilet and bathtub was open with Marisol attending to the

nude female client in the bathroom. I reached in and closed the shower curtain since
Donna was violating a client's right to privacy. Donna, in a violent manner reopened the
shower curtain. I told her that this is a privacy matter and she stated" I know" in an
intimidating and threatening manner, and continued with the shower curtain open
violating the clients right to privacy and again I was concerned about my personal safety.

In my letter dated 12/21/03 to Linda Montminy about Donna deliberately falsifying the
time sheet, I documented Donna docking me by marking me late. I requested that Donna
no longer record my time. There was no response from Linda Montminy or the
management and my request was ignored.  I requested since Donna is not my supervisor
that she no longer record my time and my supervisor does it.

Donna is using the time sheet to intimidate and threaten staff. There were complaints
about this behavior in the past. The intimidating and threatening behavior, lack of respect
for the client's dignity and rights, falsifying and using a legal document to intimidate,
hostile and threatening behaviors towards me are current behaviors and indicators of
workplace violence.


    CC:   Administrative Personnel
           Faith Kirkland
           Lionel Porter





# The Commonwealth of Massachusetts
## Executive Office of Health & Human Services
## Department of Mental Retardation
### Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 ● FAX 978-739-0417

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR
**RONALD PRESTON**
SECRETARY

**GERALD J. MORRISSEY, JR.**
COMMISSIONER
**DIANE ENOCHS**
ASSISTANT COMMISSIONER FOR
FACILITIES MANAGEMENT
**LINDA MONTMINY**
FACILITY DIRECTOR

*Administrative
chair of events
re Willit/Lockram
complaint.
2 pages*

March 18, 2004

Diane Lackiram, MRW IV
Division I
Hogan Regional Center

Dear Ms. Lackiram:

This serves to notify you that a complaint of workplace violence/unacceptable conduct has been made against you. With this, you are being placed on administrative leave with pay, effective immediately, pending a review of the matter.

Understand that you are to refrain from contacting any employee of the Hogan Regional Center and are prohibited from entering the grounds without express permission during this review. Faith Kirkland will be contacting you shortly to arrange a meeting to discuss this complaint. If you wish to meet with a union representative on the grounds of the Hogan Regional Center you are to coordinate this through your Union President.

Sincerely,

Diane Enochs

Diane Enochs
Assistant Commissioner for
Facilities Management

cc:    Linda Montminy
       Rosemary Bevins
       Faith Kirkland
       Carol Markland

*The Commonwealth of Massachusetts*

**Executive Office of Health & Human Services**
**Department of Mental Retardation**
Hogan Regional Center
P.O. Box A - Hathorne, Mass. 01937
TEL 978-774-5000 ● FAX 978-739-0417

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR
**RONALD PRESTON**
SECRETARY

**GERALD J. MORRISSEY, JR.**
COMMISSIONER
**DIANE ENOCHS**
ASSISTANT COMMISSIONER FOR
FACILITIES MANAGEMENT
**LINDA MONTMINY**
FACILITY DIRECTOR

March 26, 2004

Diane Lackiram
27 Newburg Road
Nashua, NH 03062

Dear Ms. Lackiram:

A preliminary review of the alleged incident of workplace violence/unacceptable
conduct on March 17, 2004 indicates that it does not rise to a level, which requires you
to remain on administrative leave with pay. Therefore, you are to return to work on
March 30, 2004.

Please be informed that the administrative review is not fully completed and that no
conclusion has yet been reached as to whether your alleged behavior on said date
constitutes workplace violence and/or unacceptable conduct. Therefore, in the interim
you are being reassigned to 6 Hathorne Circle of Division II. Please report to Vincent
Louissant, MRW IV who will be in the supervisor's office of 6 Hathorne Circle, at the
start of your shift on March 30, 2004.

You are expressly instructed to have no contact with Ms. Willett or any other witness to
the incident pending final disposition of the matter.

Sincerely,

Linda Montminy
RAB

Linda Montminy
Facilities Director

cc:    Rosemary Bevins
       Faith Kirkland
       Anna McKeon
       Stephen Hrones



*The Commonwealth of Massachusetts*

## Executive Office of Health & Human Services
## Department of Mental Retardation
### Hogan Regional Center
**P.O. Box A - Hathorne, Mass. 01937**
TEL 978-774-5000 ● FAX 978-739-0417

**MITT ROMNEY**
GOVERNOR
**KERRY HEALEY**
LIEUTENANT GOVERNOR
**RONALD PRESTON**
SECRETARY

**GERALD J. MORRISSEY, JR.**
COMMISSIONER
**DIANE ENOCHS**
ASSISTANT COMMISSIONER FOR
FACILITIES MANAGEMENT
**LINDA MONTMINY**
FACILITY DIRECTOR

April 2, 2004

Dianne Lackiram
27 Newburg Road
Nashua, NH 03062

Dear Ms. Lackiram:

On March 19, 2004 you were informed that an administrative review into allegations of workplace violence was taking place. Subsequently, you were placed on an administrative leave with pay. A preliminary review was conducted and on March 26, 2004 you were verbally informed that the incident did not rise to a level requiring you to remain on administrative leave. You were also informed that you were to report to 6 Hathorne Circle on March 30, 2004 until the review was completed. You stated that you were not going to return to work.

On March 29, 2004 the Workers Compensation Department received your request for industrial accident forms to be sent to your home. Upon receiving those forms you contacted the Human Resources Department and stated that you were not filing an industrial accident, that you were out of work as a result of an administrative leave and that you would not return to work until instructed to do so by your attorney.

You were informed verbally, and in writing to report to work on March 30, 2004 and have failed to do so. Accordingly, you are being marked Not On Payroll (NOP) as of March 30, 2004.

Again, I am directing you to return to work at 6 Hathorne Circle upon receipt of this letter. Failure to do so will result in your continuing to be marked NOP as well as other administrative action as deemed appropriate.

Sincerely,

Linda Montminy
Facility Director

cc    Faith Kirkland
Susan DeMarco
Anna McKeon
Lionel Porter

# SLATOFF & WARD



29 Northwest Boulevard
Nashua, NH 03063
(603) 881-9311

Mr. Lionel Porter
Re: Ms. Diane Lackiram, DOB 11/29/59

April 14, 2004

Dear Mr. Porter:

This is a follow up to our conversation of this morning. Ms. Lackiram is under my care for the treatment of depression and anxiety. I am in the process of working with her in adjusting her medication to address her symptoms. I have recommended to her that she not work at this time. It is uncertain how long she will need to remain out of work as medication adjustments can often take time and the stress of her job can also exacerbate her symptoms. If you have further questions, do not hesitate to contact me.

Sincerely,

Lauretta Mona, ARNP
Psychiatric Nurse Practitioner

# CONDENSED TRANSCRIPT

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## CIVIL ACTION NUMBER:   04-12592 GAO

DIANNE LACKIRAM,

      Plaintiff,

VS.

LINDA MONTMINY, PAT McCARTHY, FAITH KIRKLAND,
ROSEMARY BEVINS, RUTH NATHANS, LEILA SARKIS,
DIANE ENOCHS, DEPUTY COMMISSIONER OF THE
MASSACHUSETTS DEPARTMENT OF MENTAL RETARDATION,
AND RON PRESTON, SECRETARY OF THE MASSACHUSETTS
OFFICE OF HEALTH AND HUMAN SERVICES,

      Defendants.

~~~~~~~~~~~~~~~~

      DEPOSITION OF DIANNE LACKIRAM, taken on
behalf of the Defendants pursuant to the
applicable provisions of the Federal Rules of
Civil Procedure, before Susan A. Romano, Notary
Public, Registered Merit Reporter and Certified
Realtime Reporter within and for the
Commonwealth of Massachusetts, at the Offices of
Jack Daniel Court Reporting & Video Services,
Inc., 141 Portland Street, Boston, Massachusetts
on March 15, 2005 at 10:28 a.m.



**Jack Daniel**
Court Reporting & Video Services inc.

Technologies you can Use  •  Experience you can Trust
141 Portland Street, Suite 200, Boston, MA 02114
Phone: 617.557.0039  •  Toll Free: 1.888.922.JACK  •  Fax: 617.557.0040
www.jackdanielreporting.com

DIANNE LACKIRAM   03/15/05

17 (Pages 65 to 68)

Page 65

1   Q.  Why not?
2   A.  Just didn't.
3   Q.  Are you a person who, when told you
4   can't do something, you don't inquire
5   further?  You don't question it?
6   A.  Oh, no.
7   Q.  You don't seem to be that way --
8   A.  No.
9   Q.  -- do you?
10  A.  No.
11  Q.  But all of a sudden, you're telling
12  me, with regard to overtime, because they
13  said initially you couldn't do it, you
14  decided, okay, I won't do it.  And that,
15  despite the fact that Harriet Ettienne was
16  told the same thing, she couldn't do
17  overtime, and yet she was doing overtime.
18  A.  I didn't inquire about that because
19  I was not interested in working overtime.
20  Q.  Oh, so you were not interested in
21  working overtime.
22  A.  No.
23  Q.  So the fact that you didn't work
24  overtime was not because you couldn't, but

Page 66

1   you weren't interested in it.
2   A.  No.  I was told I could not work
3   it.
4   Q.  Yes, but you say at the same time
5   you weren't interested in it.
6   A.  I wasn't interested, but I was also
7   told that I couldn't work it anyway.
8   Q.  Okay.  And you're trying to tell me
9   that the reason you weren't interested was
10  because you were told you couldn't do it.
11  A.  No.  I was not interested because
12  of the commute going back and forth,
13  living in New Hampshire, and the terribly
14  long ride, getting home, having to prepare
15  supper for my family, coming back, trying
16  to -- I was not interested in it from Day
17  1.  I was told I could not work overtime
18  and I did not.  I did not volunteer --
19  under no circumstances did I volunteer to
20  work overtime.
21  Q.  Okay.
22  A.  Okay?  And I had no interest based
23  on the travel.
24  Q.  Okay.  Was there any other -- So

Page 67

1   we were talking about retaliation.
2   A.  Okay.
3   Q.  And as I understood it, you said
4   the retaliation took the form of the fact
5   that you weren't allowed to do overtime.
6   A.  Retaliation took the form of
7   overtime, which is my job description
8   itself.  I don't feel that I took on the
9   same responsibilities as the other
10  supervisors.
11  Q.  What other responsibilities?
12  A.  Well, I never really functioned as
13  the AO.  A lot of the times that I came
14  to work, I functioned on the apartment
15  providing direct coverage.
16  Q.  And by that what do you mean?
17  A.  I was more or less functioning as
18  an MRW-2 or an MRW-1, slash, also trying
19  to provide supervision of that apartment.
20  Q.  And when you say you were
21  functioning as an MRW-2 or 1, what did
22  that mean specifically?
23  A.  I was doing the same job as an
24  MRW-1 did.

Page 68

1   Q.  Specifically what?
2   A.  They -- Providing direct care
3   coverage.
4   Q.  And what did that involve?
5   A.  The daily routine; taking care of
6   the clients, making sure the programs are
7   done.
8   Q.  Wasn't that one of the things that
9   was an MRW's job, to make sure that
10  programming was --
11  A.  Um-hum.
12  Q.  -- done?
13  A.  Um-hum.
14  Q.  So why was that an MRW-2 or a 1
15  function?
16  A.  Because an MRW-2 has -- they are
17  the team leader of the apartment, okay?
18  So they're making sure, as well as an
19  MRW-3, in that particular area, that
20  particular apartment, that things are being
21  carried out the way that they should.
22  Q.  And it was -- You found that you
23  were being forced to do that.
24  A.  I didn't say I was being forced.

**Jack Daniel**
Court Reporting & Video Services
INC.

TECHNOLOGIES YOU CAN USE          141 Portland Street . Boston, MA 02114          EXPERIENCE YOU CAN TRUST
                                  www.jackdanielreporting.com
617.557.0039                      888.922.JACK                                    FAX 617.557.0040