UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| DIANE LACKIRAM | } |
| Plaintiff, | } |
| | } |
| v. | } C.A. No. 04-12592-GAO |
| | } |
| LINDA MONTMINY, PAT MCCARTHY, | } |
| FAITH KIRKLAND, ROSEMARY BEVINS, | } |
| RUTH NATHANS, LILA SARKIS, | } |
| DIANE ENOX, Deputy Commissioner of the | } |
| Massachusetts Department of Mental Retardation, | } |
| GERALD J. MORRISSEY, Commissioner of the | } |
| Massachusetts Department of Mental Retardation, | } |
| and RON PRESTON, Secretary of the | } |
| Massachusetts Office of Health and Human | } |
| Services | } |
| Defendants. | } |

_____}

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO THE
DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

The Plaintiff hereby supplements her opposition to the Defendants' motion for judgment

as a matter of law.

**I.    SOVEREIGN IMMUNITY DOES NOT BAR RECOVERY AGAINST THE
DEPARTMENT OF MENTAL RETARDATION OR THE OFFICE OF
HEALTH AND HUMAN SERVICES**

The Supreme Court held in <u>Fitzpatrick</u> v. <u>Bitzer</u>, 427 U.S. 445, 456 (1976), that Congress

had the power to abrogate sovereign immunity for suits brought under laws enacted pursuant to

the Fourteenth Amendment.  <u>Id</u>. ("We think that Congress may, in determining what is

"appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth

Amendment, provide for private suits against States or state officials which are constitutionally

impermissible in other contexts.")

In addition to holding that Congress had the power to abrogate sovereign immunity for

laws passed pursuant to the Fourteenth Amendment, the Court ruled that Congress had, in fact,

exercised this power when it passed the 1972 Amendments to Title VII of the Civil Rights Act of

1964. ("Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of "race, color, religion, sex, or national origin." Id. at 447-48.

Therefore, neither the Eleventh Amendment nor the doctrine of sovereign immunity acts as a bar to the Plaintiff's recovery of damages from any of the Defendants, whether in their individual or official capacities.

## II. THE CLAIMS AGAINST PRESTON AND MORRISSEY ARE BROUGHT IN THEIR OFFICIAL CAPACITIES, WHICH IS EQUIVALENT TO A CLAIM AGAINST THE DEPARTMENTS THEMSELVES

The Plaintiff's complaint names several parties as Defendants, including Morrissey and Preston: "Defendant Gerald J. Morrissey is the Commissioner of the Massachusetts Department of Mental Retardation and an employee of the Office of Health and Human Services, acting in the scope of employment at all times relative to this complaint, and is sued in his individual capacity as well as his official capacity…Defendant Ron Preston, is the Secretary of the Massachusetts Office of Health and Human Services, acting in the scope of employment at all times relative to this complaint, and is sued in his individual capacity as well as his official capacity." See Pl. Compl. At 3.

The Supreme Court has repeatedly held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .As such, it is no different from a suit against the State itself." Printz v. United States, 521 U.S. 898, 930 (1997); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); see also Hafer v. Melo, 502 U.S. 21, 25 (1991) ("official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'  Suits against state officials in their official capacity therefore should be treated as suits against the State.  Indeed,

when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation.") (internal citations and quotations omitted).

Therefore, any suggestion by the Defendant that the suit is not properly pled against the Department of Mental Retardation or the Office of Health and Human Services is without merit.

III.    **EVEN THOUGH PLAINTIFF PRESENTED MORE EVIDENCE THAN JUST TEMPORAL PROXIMITY, CLOSENESS IN TIME ALONE IS ENOUGH TO GET TO THE JURY ON THE ISSUE OF RETALIATION**

a.    **The Plaintiff presented strong evidence of temporal proximity**

It is well-settled that temporal proximity is one method of proving causal connection between protected activity and retaliatory conduct.  See Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994) (per curiam) (stating that "one way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action."); see also Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (stating that "there are many sources of circumstantial evidence that…can demonstrate retaliation… [including] temporal proximity of an employee's protected activity to an employer's adverse action."); Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988) (adverse employment action occurring "soon after" employee engages in protected conduct "is indirect proof of a causal connection between the [adverse action] and the activity because it is strongly suggestive of retaliation.")

In the case at bar, the Plaintiff has shown that the Defendants' retaliation against her was nearly simultaneous with the protected activity.  On April 23, 2003, the Plaintiff had a meeting scheduled with several of the Defendants to discuss her complaints of race discrimination.  Five minutes before that meeting and five minutes after it, the Plaintiff was told her pay was being docked for failure to properly document sick and personal time, respectively.   This action was taken in violation of the collective bargaining agreement which required a demonstrated pattern

3

of abuse before the employer could request medical documentation to justify missed work. Moreover, the Plaintiff had never even been warned about her use of sick or personal time prior to the pay docking.

The Plaintiff next engaged in protected activity on June 24, 2003, when she received a phone call from Lisa Harrison, of the Department's Affirmative Action Office. During that call, the Plaintiff informed Harrison that she intended to file a complaint with the MCAD because the issues raised in her April 23, 2003 meeting with Defendant Montminy were not being addressed. Almost immediately thereafter, the Plaintiff received an informal warning for improper phone use from Defendants Sarkis and Nathans, in consultation with Kirkland. Two weeks later, the Plaintiff was given a formal warning for attendance issues by Defendants Sarkis and Nathans, in consultation with Kirkland, despite the fact that she had recently received an evaluation on June 19, 2003, that contained no mention of any attendance problems.[1]

This is unlike cases in which temporal proximity alone did not raise an inference of causation sufficient to raise a jury issue. See Dressler v. Daniel, 315 F.3d 75, 80 (1st Cir. 2003) (where retaliatory act occurred two years later, court upheld granting of summary judgment, noting that "[t]he inference of a causal connection becomes more tenuous with time."); Mesnick, 950 F.2d at 828 (observing that a nine-month period between the protected conduct and adverse action suggested the absence of any causal connection); Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003) (one year is too remote)

Rather, this case is similar to other cases in which the closeness in time of the protected activity and adverse employment action was alone sufficient to get to the jury. See O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001) (one-and-a-half months is

---

[1] The relevant inquiry is when the *decision* was made to issue the warning, not when it was actually typed Although the formal warning for attendance was dated July 11, all entries after July 9 are handwritten, suggesting that the warning was typed sometime in the first week of July, 2003. Drawing all inferences in the Plaintiff's favor, this Court should find that the *decision* to issue the warning was made several days before July 11.

4

sufficiently close in time to show causal connection); <u>Dey</u> v. <u>Colt Constr. & Dev. Co.</u>, 28 F.3d

1446, 1458 (7th Cir. 1994) (four weeks sufficiently close); <u>Peterson</u> v. <u>Scott County</u>, 406 F.3d

515, 524 (8th Cir. 2005) (fifteen days sufficiently close).

Furthermore, the Plaintiff has offered additional circumstantial evidence suggestive of

causal connection.  With respect to the two instances of pay docking, there is no evidence in the

record that the Plaintiff had ever before been required to produce documentation to justify time

off prior to her complaints of discrimination, nor had the Defendants documented a pattern of

abuse of sick or personal time as required by the collective bargaining agreement.  With respect

to the formal warning for attendance, absolutely no mention of any negative attendance issues

was made on the Plaintiff's annual evaluation, which had occurred just weeks prior.  Moreover,

all of the cited instances of tardiness and absenteeism were *after* the Plaintiff's January, 2003

complaint to Defendant Sarkis regarding the discriminatory treatment of Jones.

> **b.  The Plaintiff has presented strong evidence that the Defendants' claimed justifications are pretextual**

Even if the Defendants' have asserted a legitimate non-discriminatory reason for their

actions, which the Plaintiff contests, the Plaintiff has raised a jury issue as to pretext.

Specifically, she has shown that the Defendants proffered reasons for their actions should not be

believed.

To evaluate a Plaintiff's evidence of pretext, this Court must determine "whether,

viewing the aggregate package of proof offered by [the Plaintiff] and taking all inferences in

[her] favor, [the Plaintiff] has raised a [jury issue] as to whether the [adverse employment action]

was motivated by [race] discrimination."  <u>Santiago-Ramos</u> v. <u>Centennial P.R. Wireless Corp.</u>,

217 F.3d 46, 54 (1st Cir. 2000) (internal citations and quotations omitted).  A motion for

judgment as a matter of law must be denied "if the record includes sufficient competent evidence

from which a reasonable jury could (although it need not) infer that the employer's claimed

reasons...were pretextual and that the decision was the result of discriminatory animus."

Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431 (1st Cir. 2000) (internal citations and

quotations omitted).  In making a showing at this final stage, evidence used to support the prima

facie case is considered along with other evidence before the Court to determine whether there

exists a dispute of fact on the ultimate issue of retaliation.  Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 148 (2000).

It is important to note that there is no "mechanical formula" for finding pretext.  Feliciano

de la Cruz, 218 F.3d at 6.  It is the type of inquiry where "everything depends on the individual

facts."  Thomas v. Eastman Kodak Co., 183 F.3d 38, 57 (1st Cir. 1999) (internal citations

omitted).  As such, courts should be "particularly cautious" about taking such questions out of

the jury's hands.  Hodgens, 144 F.3d at 167; see also Petitti v. New England Tel. & Tel. Co., 909

F.2d 28, 34 (1st Cir. 1990) ("This court has consistently held that determinations of motive and

intent, particularly in discrimination cases, are questions better suited for the jury, as proof is

generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'")

In the case at bar, the record demonstrates that the Defendants' stated reasons for their

decisions were not the true motivating factors in their adverse employment actions.  Rather, the

Plaintiff has produced substantial evidence that the real reason that the Defendants twice docked

the Plaintiff's pay, gave her a formal and informal warning, and suspended her was because they

were angry that she had spoken up about discrimination and had not minded her own business as

she had been instructed to do when speaking up for Jones.

This case is stronger than Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 180 (2d Cir.

2005), in which the court found that closeness in time between protected activity and adverse

action alone gave rise to a triable issue on pretext.  In Jute, the plaintiff claimed that, as a result

of her participation in a discrimination suit, she was subject to retaliation, including

reassignment, failure to promote, and eventually termination.  Id. at 170.  The defendant

contended that the termination was due to corporate restructuring and offered other legitimate

explanations for why the plaintiff's duties were changed and why she was not promoted.  Id. at

179-80.  In overturning the lower court's grant of summary judgment, the court found sufficient

evidence of pretext from the simple fact that the first act of retaliation occurred one day after the

first protected activity.  Id. at 180; see also Quinn v. Green Tree Credit Corp., 159 F.3d 759, 770

(2d Cir. 1998) (finding triable issue on pretext where protected activity and adverse action were

close in time and the defendant's asserted non-retaliatory explanations were generated by two of

the alleged perpetrators of discrimination).

In the case at bar, several acts of retaliation occurred on the same day as the protected

activity, closer in time than Jute.  Similar to Quinn, to the extent the Defendants have asserted

any supposed non-retaliatory justification for their actions, the supporting proof of these

explanations has been generated by the alleged perpetrators of discrimination.  Moreover, the

Plaintiff has additional evidence of pretext, namely the positive bi-annual evaluation issued just

two weeks before her formal warning for "unacceptable attendance" and the lack of any

attendance-related discipline prior to her engaging in protected activity,[2] which makes her case

even stronger than the plaintiffs in Jute and Quinn.  See also Dey, 28 F.3d at 1460-61 ("A

detailed refutation of events which underlie the employer's negative performance assessment

demonstrates that the employer may not have honestly relied on the identified deficiencies in

making its decision.")

---

[2] The Defendants claim that the Plaintiff had a "long history of counseling and suspensions for unacceptable attendance" while at the Fernald Center, before coming to Hogan in 2002.  See Def. Memo Sum. Judg. at 20.   Yet the citation to the record supporting such a claim is incorrect.  A review of the affidavits submitted in connection with this motion make no mention of any pre-2003 attendance issues.

As such, the jury could conclude that the Defendants' proffered reasons for its actions are pretextual, masking discriminatory animus.  Therefore, the Plaintiff has sufficient evidence to get to the jury on the claim for retaliation.

## IV.    THE PLAINTIFF SUFFERED ADVERSE EMPLOYMENT ACTION

In <u>Burlington Northern & Santa Fe Ry.</u> v. <u>White</u>, the Supreme Court dramatically lowered the bar required for establishing an adverse employment action in a claim for retaliation:

> The anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.

548 U.S. 53 (2006).

The Defendants in this case took tangible employment action[3] against the Plaintiff.  They docked her pay, gave her informal and formal warnings, and suspended her.  This evidence is enough to raise a jury issue as to whether the Plaintiff suffered an adverse employment action.

**WHEREFORE**, the Plaintiff requests that the Court deny the Defendants' motion.

Respectfully Submitted,
Diane Lackiram
By her attorneys

DATED: February 26, 2008

<u>//s// Michael Tumposky</u>
Stephen Hrones
BBO No. 242860
Jessica D. Hedges
BBO No. 645847
Michael Tumposky
BBO No. 660618
Hrones, Garrity & Hedges
Lewis Wharf-Bay 232
Boston, MA 02110-3927
T) (617) 227-4019

---

[3] Since tangible employment action was taken, the employer (in this case DMR or HHS) would be vicariously liable. <u>Burlington Indus.</u> v. <u>Ellerth</u>, 524 U.S. 742, 760 (1998)

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Tumposky, hereby certify that, on this the 26th day of February, 2008, I have served a copy of this document, where unable to do so electronically, by first-class mail to all counsel of record in this matter.

<u>//s// Michael Tumposky</u>
Michael Tumposky